# EXHIBIT 1

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

**DEERE & COMPANY,**

Petitioner,

v.

**ESCO GROUP LLC,**

Patent Owner.
_____

Case No. IPR2022-00187
Patent No. 10,273,662 B2
_____

**PETITION FOR *INTER PARTES* REVIEW OF
U.S. PATENT NO. 10,273,662 B2**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................1

II.     MANDATORY NOTICES UNDER 37 C.F.R. § 42.8............................2

    A.     Real Parties-In-Interest under 37 C.F.R. § 42.8(b)(1) .......................2

    B.     Related Matters under 37 C.F.R. § 42.8(b)(2) ...................................2

    C.     Lead and Back-Up Counsel under 37 C.F.R. § 42.8(b)(3) ...............3

    D.     Service Information under 37 C.F.R. § 42.8(b)(4)............................3

III.    REQUIREMENTS FOR IPR UNDER 37 C.F.R. § 42.104 ....................4

    A.     Grounds for Standing under 37 C.F.R. § 42.104(a)..........................4

    B.     Challenges under 37 C.F.R. § 42.104(b)..........................................4

    C.     Claim Construction under 37 C.F.R. § 42.104(b)(3) ........................4

IV.     SUMMARY OF THE PATENT.................................................................5

    A.     Background of the Art......................................................................5

    B.     The Alleged Invention of the '662 Patent..........................................6

V.      LEVEL OF ORDINARY SKILL IN THE ART ...................................8

VI.     THE CHALLENGED CLAIMS OF THE '662 PATENT
    ARE UNPATENTABLE..................................................................8

    A.     Ground 1: Claims 1-26 Are Obvious over Jones in
          View of Liess....................................................................................8

             1.     Claim 1 ...............................................................................12

2.      Claims 2-7 ....................................................................31

3.      Claim 8 .........................................................................34

4.      Claim 9-13 ....................................................................40

5.      Claim 14 .......................................................................41

6.      Claims 15-20 ................................................................41

7.      Claim 21 .......................................................................43

8.      Claims 22-26 ................................................................43

B.   Ground 2: Claims 8-13 and 21-26 Are Obvious over
     Livesay in View of the Knowledge and Skill of a POSITA .............44

1.      Claim 8 .........................................................................46

2.      Claim 9-13 ....................................................................69

3.      Claim 21 .......................................................................70

4.      Claim 22-26....................................................................71

VII.   DISCRETIONARY DENIAL UNDER 35 U.S.C. §§ 314(A)
       OR 35 U.S.C. § 325(D) IS NOT WARRANTED .....................................**72**

A.   The *Fintiv* Factors Weigh in Favor of Institution .............................74

B.   The *Advanced Bionics* Factors Weigh in Favor of Institution ...........79

VIII.  CONCLUSION ...........................................................................**81**

# TABLE OF AUTHORITIES

**Page**

## CASES

*3Shape AS v. Align Technology*,
   Case No. 1-18-cv-00886 (D. Del. Feb. 26, 2021) …………...…………………75

*Advanced Bionics, LLC v. Med-El Elektromedizinische Geräte GmbH*,
   IPR2019-01469 (PTAB Feb. 13, 2020) …………………………...1, 74, 79-81

*Apple Inc. v. Fintiv, Inc.*,
   IPR2020-00019 (PTAB March 20, 2020) ………………………………1, 73-79

*Becton, Dickinson & Co. v. B. Braun Melsungen AG*,
   IPR2017-01586 (PTAB Dec. 15, 2017) …………………………………74, 80

*In re Bigio*,
   381 F.3d 1320, 72 USPQ 1209 (Fed. Cir. 2004) …………………………….11

*In re Farrenkopf*,
   713 F.2d 714, 219 USPQ 1 (Fed. Cir. 1983) …………………………….…...38

*In re Keller*,
   642 F.2d 413, 208 USPQ 871 (CCPA 1981) …………………………….…38

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398, 82 USPQ2d 1385 (2007) …………………………….......11, 57

*NHK Spring Co. v. Intri-Plex Techs., Inc.*,
   IPR2018-00752 (PTAB Sept. 12, 2018) ………………………………….…73

*Sand Revolution II, LLC v. Continental Intermodal Grp.–Trucking, LLC*,
   IPR2019-01393 (PTAB June 16, 2020) …………………………………77, 78

*Solvay USA, Inc. v. Worldsource Enter., LLC*,
   IPR2020-00768 (PTAB Sept. 25, 2020) …………………………….......79, 80

*Solvay USA, Inc. v. Worldsource Enter., LLC*,
   IPR2020-00768 (PTAB Mar. 1, 2021) …………………………………...…80

*Sotera Wireless, Inc. v. Masimo Corporation*,
    IPR2020-01019 (PTAB Dec. 1, 2020) ………………………………76, 77

*Weatherford U.S., L.P. v. Enventure Global Technology, Inc.*,
    IPR2021-00107 (PTAB May 26, 2021) …………………………………78

*Wildcat Licensing Wi LLC v. Bayerische Motoren Werke AG*,
    Case No. 19-cv-834-MN-JLH, 2020 WL 6940038 (D. Del. Nov. 25, 2020)…74, 75, 77

**STATUTES**

35 U.S.C. § 102 ………………………………………………………..8-10, 44

35 U.S.C. § 103 …………………………………………………………1, 4, 11

35 U.S.C. § 311 ……………………………………………………………1

35 U.S.C. § 314 ………………………………………………………1, 72

35 U.S.C. § 315 ……………………………………………………………1

35 U.S.C. § 325 ………………………………………………………1, 72, 73, 80

**REGULATIONS**

37 C.F.R. § 42.6 ………………………………………………………..84

37 C.F.R. § 42.8 ………………………………………………………..2, 3, 83

37 C.F.R. § 42.10 ………………………………………………………...3

37 C.F.R. § 42.15 ………………………………………………………83

37 C.F.R. § 42.24 ………………………………………………………83

37 C.F.R. § 42.103 …………..…………………………………………83

37 C.F.R. § 42.104 ………………………………………………….....4

iv

37 C.F.R. § 42.105 …………………………………………………………..84

MPEP § 2145 …………………………………………………………37, 38

MPEP § 2159.01 …………………………………………………………9

## LIST OF EXHIBITS

| EXHIBIT | DESCRIPTION |
| --- | --- |
| Ex-1001 | U.S. Patent No. 10,273,662 ("the '662 Patent") |
| Ex-1002 | Declaration of Dr. Elliot Stern, Ph.D. |
| Ex-1003 | Curriculum Vitae of Dr. Elliot Stern, Ph.D. |
| Ex-1004 | U.S. Patent No. 8,844,175 ("the '175 Patent") |
| Ex-1005 | Prosecution History of the '662 Patent, U.S. Patent Application No. 13/746,210, downloaded from PAIR |
| Ex-1006 | Reserved |
| Ex-1007 | Reserved |
| Ex-1008 | Complaint, *ESCO Group LLC v. Deere & Company*, Case No. 1:20-cv-01679, Dkt. 1 (D. Del. Dec. 10, 2020) |
| Ex-1009 | Docket Sheet, ESCO Group LLC v. Deere & Company, Case No. 1:20-cv-01679, District of Delaware, dated November 16, 2021 |
| Ex-1010 | *Wildcat Licensing WI LLC v. Bayerische Motoren Werke AG*, Case No. 19-cv-834, 2020 WL 6940038-MN-JLH (D. Del. Nov. 25, 2020) |
| Ex-1011 | *3Shape AS v. Align Technology*, Case No. 1-18-cv-00886, Dkt. 368 (D. Del. Feb. 26, 2021) |
| Ex-1012 | Scheduling Order, *ESCO Group LLC v. Deere & Company*, Case No. 1:20-cv-01679, Dkt. 24 (D. Del. June 28, 2021) |
| Ex-1013 | U.S. Patent No. 5,709,043 ("Jones") |
| Ex-1014 | U.S. Patent No. 3,624,827 ("Liess") |
| Ex-1015 | U.S. Patent No. 5,561,925 ("Livesay") |
| Ex-1016 | U.S. Patent No. 3,196,956 ("Ratkowski") |

| | |
|---|---|
| Ex-1017 | Japanese Patent Publication No. S50-132703 ("Teraoka") |
| Ex-1018 | U.S. Patent No. 4,326,348 ("Emrich") |
| Ex-1019 | U.S. Patent No. 5,432,138 ("Livesay '138") |
| Ex-1020 | U.S. Patent Publication No. 2005/0229442 ("Jones '442") |
| Ex-1021 | U.S. Patent Publication No. 2004/0060207 ("Livesay '207") |
| Ex-1022 | Index of Claim Limitations for the '662 Patent |
| Ex-1023 | Stipulation and Proposed Order, ESCO Group LLC v. Deere & Company, Case No. 1:20-cv-01679, Dkt. 8 (D. Del. Mar. 29, 2021) |

## I.  INTRODUCTION

Deere & Company ("Petitioner") requests *inter partes* review ("IPR") of claims 1-26 ("Challenged Claims") of U.S. Patent No. 10,273,662 ("the '662 Patent" or "Ex-1001"), which is assigned to ESCO Group LLC ("Patent Owner").  *See* 35 U.S.C. §§ 311, et seq.  On December 10, 2020, Patent Owner filed a complaint alleging Petitioner infringes the '662 Patent.  *See* Ex-1008.  On March 17, 2021, Patent Owner and Petitioner filed a Stipulation and Proposed Order stipulating, *inter alia*, that Patent Owner served the complaint on Petitioner on March 9, 2021 (*see* Ex-1023), which the district court approved on March 18, 2021 (*see* Ex-1009).  Petitioner, therefore, has timely filed this Petition.  *See* 35 U.S.C. § 315(b).

Based on the evidence and arguments presented below and in the accompanying expert declaration of Dr. Elliot Stern, Petitioner has demonstrated a reasonable likelihood of showing that at least one Challenged Claim is unpatentable under 35 U.S.C. § 103(a).  *See* 35 U.S.C. § 314(a).  Moreover, no circumstances warrant the Board's exercising its discretion to deny this Petition under the *Fintiv* factors related to 35 U.S.C. § 314(a) or under the *Advanced Bionics* framework related to 35 U.S.C. § 325(d).

Thus, Petitioner requests the Board institute IPR of the Challenged Claims.

## II.     MANDATORY NOTICES UNDER 37 C.F.R. § 42.8

Petitioner provides the following notices pursuant to 37 C.F.R. § 42.8.

### A.     Real Party in Interest under 37 C.F.R. § 42.8(b)(1)

The real parties in interest are (1) Deere & Company, which Patent Owner has named as a defendant and accused of infringing the '662 Patent in a lawsuit styled *ESCO Group LLC v. Deere & Company*, Case No. 1:20-cv-01679, filed in U.S. District Court for the District of Delaware ("the Litigation"), and (2) Black Cat Wear Parts, Ltd., a Canadian company headquartered in Edmonton, Alberta, Canada ("Black Cat"), which is the manufacturer of the products Patent Owner has accused of infringement in the Litigation.  Patent Owner has not sued Black Cat for patent infringement of the '662 Patent.

### B.     Related Matters under 37 C.F.R. § 42.8(b)(2)

Patent Owner has asserted the '662 Patent in the Litigation described above and the '662 Patent is the subject of this Petition filed on November 16, 2021. Petitioner has also filed IPR2022-00186, challenging all claims of U.S. Patent No. 8,844,175 ("the '175 Patent"), which Patent Owner has also asserted in the Litigation against Petitioner.[1]   Petitioner is unaware of any other judicial or administrative

---

[1] On April 7, 2021, Patent Owner served an amended complaint in the Litigation alleging that Petitioner also infringes the '175 Patent.  *See* Ex-1004.

2

matters that would affect, or be affected by, a decision in this proceeding.

### C.   Lead and Back-up Counsel under 37 C.F.R. § 42.8(b)(3)

Petitioner provides the following designation of counsel:

| LEAD COUNSEL | BACK-UP COUNSEL |
|---|---|
| Paul M. Ulrich (Reg. No. 46,404)<br>ULMER & BERNE LLP<br>600 Vine Street, Suite 2800<br>Cincinnati, Ohio 45202<br>Tel: (513) 698-5156<br>Fax: (513) 698-5157<br>Email: pulrich@ulmer.com | Matthew E. Vale (Reg. No. 64,993)<br>ULMER & BERNE LLP<br>600 Vine Street, Suite 2800<br>Cincinnati, Ohio 45202<br>Tel: (513) 698-5036<br>Fax: (513) 698-5037<br>Email: mvale@ulmer.com<br><br>Paul J. Linden (Reg. No. 74,058)<br>ULMER & BERNE LLP<br>600 Vine Street, Suite 2800<br>Cincinnati, Ohio 45202<br>Tel: (513) 698-5096<br>Fax: (513) 698-6097<br>Email: plinden@ulmer.com |

Under 37 C.F.R. § 42.10(b), Petitioner has filed a power of attorney with this

Petition.

### D.   Service Information under 37 C.F.R. § 42.8(b)(4)

Please address all correspondence and service to lead counsel and back-up

counsel at the address provided above.  Petitioner consents to electronic service by

electronic mail.

## III.    REQUIREMENTS FOR IPR UNDER 37 C.F.R. § 42.104

### A.    Grounds for Standing under 37 C.F.R. § 42.104(a)

The '662 Patent is available for IPR and Petitioner is not barred or estopped from requesting IPR on the grounds identified herein.

### B.    Identification of Challenge under 37 C.F.R. § 42.104(b) and Relief Requested

The Challenged Claims are unpatentable and should be cancelled based on the following grounds ("the Grounds"):

| GROUND | CLAIMS | BASIS FOR UNPATENTABILITY |
|---|---|---|
| **Ground 1** | 1-26 | Obvious under 35 U.S.C. § 103(a) over U.S. Patent No. 5,709,043 ("Jones") in view of U.S. Patent No. 3,624,827 ("Liess"). |
| **Ground 2** | 8-13, 21-26 | Obvious under 35 U.S.C. § 103(a) over U.S. Patent No. 5,561,925 ("Livesay") in view of the knowledge and skill of a person of ordinary skill in the art ("POSITA"). |

### C.    Claim Construction under 37 C.F.R. § 42.104(b)(3)

The Board need not construe any terms of the Challenged Claims to grant this Petition.  Petitioner may present claim constructions later in this proceeding in response to arguments presented by the Patent Owner or findings of the Board.

## IV.   SUMMARY OF THE PATENT

### A.   Background of the Art

The '662 Patent is directed to a wear assembly secured to excavating equipment. *See* Ex-1001, 1:12-13. "Wear parts are commonly attached along the front edge of excavating equipment … to protect the equipment from wear and to enhance the digging operation." *Id*., 1:16-20. "Such wear parts typically include a base, a wear member and a lock to releasably hold the wear member to the base." *Id*., 1:20-23. The base can include a nose, fixed to a front edge of excavating equipment, and a wear member often is comprised of a point, which "narrows to a front digging edge for penetrating and breaking up the ground" and fits over the nose. *Id.*, 1:24-31. When assembled, the nose and point "cooperatively define an opening into which the lock is received to releasably hold the point to the nose." *Id*., 1:31-33.

According to the '662 Patent, "wear parts are commonly subjected to harsh conditions and heavy loading." *Id*., 1:34-35. As a result, portions of the wear parts, particularly the wear members, can wear down and require replacement. *See id*., 1:35-37. The '662 Patent acknowledges, "[m]any designs have been developed in an effort to enhance the strength, stability, durability, penetration, safety, and ease of replacement of such wear members." *Id*., 1:37-40.

5

## B.     The Alleged Invention of the '662 Patent

The '662 Patent relates to a wear assembly to releasably secure a wear member to excavating equipment.  *See id*., 1:12-13.  Like known wear assemblies described in its Background, the '662 Patent claims a wear assembly that includes a base 15, attachable to excavating equipment (e.g., front edge of a bucket), with a nose 14 over which the wear member 12 fits and a lock 16 releasably securing the two together. *See id*., 1:16-23; 3:4-19; FIG. 1A.



In FIG. 3 below, the '662 Patent shows the nose 14 "has a body 25 with top and bottom walls 20, 21 that converge toward a front end 24, and opposite sidewalls 22, 23." *Id*., 3:20-22.  The front end 24 of the nose 14 includes top and bottom stabilizing surfaces 30, 32, which can be substantially parallel to a longitudinal axis 34.  *See id*., 3:25-27.  The top, bottom, and side walls 20-23 of nose 14 can include a pair of stabilizing surfaces 40-47 that can also be substantially parallel to the longitudinal axis 34.  *See id*., 3:60-62.  According to the '662 Patent, "[w]hile any portion of the nose may at times bear loads from the point, the stabilizing surfaces

6

are intended to be primary surfaces for resisting loads that are applied to the nose by the point." *Id.*, 3:66-4:3.



The wear member 12 comprises top, bottom, and side portions 50-53 with a rear mounting end and a front working end having a front digging edge. *See id.*, 1:29-31; 4:4-7. In FIG. 7, the '662 Patent shows the wear member 12 defines a socket 70 for receiving the nose 14. *See id.*, 1:24-31; 4:10-12. Likewise, the socket 70, formed by interior walls 100-103 of the top, bottom, and side portions 50-53, bears a shape that is complementary to that of the nose 14. *See id.*, 4:12-15. Each of the walls 100-103 includes stabilizing surfaces 110-117 to bear against corresponding stabilizing surfaces 40-47 of the nose 12. *See id.*, 4:21-24. "The formation of stabilizing recesses in the nose and complementary projections in the socket is preferred to reduce the risk of wearing or deforming the nose surfaces by the mounting of multiple points or on account of holes being worn through the point." *Id.*, 6:10-14.

FIGS. 3 and 7 indicate that when the wear member is positioned on the nose,

channel 140 and passage 150 collectively define opening 160 to receive the lock 16, which releasably secures the wear member to the base.  *See id.*, 1:31-33; 8:48-57.

## V.      LEVEL OF ORDINARY SKILL IN THE ART

At the time of the alleged invention, a POSITA would have had at least a bachelor's degree in mechanical engineering or a related discipline, or have had at least three years of experience working with wear assemblies for excavating equipment.  *See* Ex-1002, ¶¶ 13-14.

## VI.     THE CHALLENGED CLAIMS OF THE '662 PATENT ARE UNPATENTABLE

Each of the Challenged Claims is rendered obvious by one or more references, singularly or in combination.  *Compare* Ex-1001 *with* Ex-1013.  Each of the Grounds below shows a reasonable likelihood that one or more of the Challenged Claims are unpatentable.  *See id.*, ¶ 4.  The Grounds are not cumulative or redundant.

### A.      Ground 1:  Claims 1-26 Are Obvious over Jones in View of Liess

Jones issued January 20, 1998, more than one year prior to the '662 Patent's earliest filing date of February 17, 2006, based on U.S. Provisional Application No. 60/774,401.  *Compare* Ex-1001 *with* Ex-1013.  Therefore, Jones is prior art under

pre-AIA 35 U.S.C. § 102(b).[2]  *See* Ex-1002, ¶ 36.  The Examiner did not apply Jones

in any rejections during prosecution, but Jones was cited as a reference.  *See* Ex-

1001.

---

**Jones**



---

Jones discloses an excavating tooth for attachment to the front edge of an

---

[2] The '662 Patent was filed January 13, 2013 and claims priority, through a series of

continuation applications, to a provisional application filed February 17, 2006, and

is, therefore, governed by pre-AIA 35 U.S.C. §§ 102, 103.  *See* MPEP § 2159.01.

excavator.  *See* Ex-1013, 1:4-5.  Jones discloses a point 12, an adapter 13, and a lock 14, where the adapter "includes a rear mounting or base end 18 and a forwardly projecting nose 20."  *Id.*, 4:55-58; FIGS. 1-3.  Further, Jones discloses, "[p]oint 12 has a generally tapered shape which forms front digging edge 15 and a rearwardly opening socket 16 for receiving nose 20."  *Id.*, 4:59-61.

Liess published November 30, 1971 and is, therefore, prior art under § 102(b).  *Compare* Ex-1001 *with* Ex-1014; *see also* Ex-1002, ¶ 38.  The Examiner applied Liess in rejections during prosecution of the '662 Patent.  *See e.g.*, Ex-1005 at 157, 217, 267, 302.

**Liess**



Liess discloses an earth-working tooth and supporting adapter.  *See* Ex-1014,

1:13-14.  Liess shows a tooth 11 secured to an adapter 12 by a retaining pin 13, where the adapter 12 is attached to an excavator.  *See id.*, 1:64-67; FIGS. 1-3.  The tooth and adapter were "designed to resist side loads on the tooth and to minimize the effect of bending forces" and to "provide[] a novel design … providing additional strength for withstanding normal operating conditions."  *Id*., 1:13-23.

Although Jones and Liess were of record during prosecution, the Examiner neither considered the combination of the two references nor applied them together against the claims of the application.  *See* Ex-1005.  In this respect, and as explained in more detail in Section VII(B), the Examiner erred in evaluating the prior art.

Both Jones and Liess are analogous art for § 103 purposes because both arise from the same field of endeavor as the '662 Patent and both are directed to the same problem as the '662 Patent sought to solve.  *See In re Bigio*, 381 F.3d 1320, 1325, 72 USPQ2d 1209 (Fed. Cir. 2004).  A POSITA would be motivated to combine Jones and Liess for reasons set forth below.  *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420, 82 USPQ2d 1385 (2007) ("[A]ny need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed.").

1. **Claim 1:**

   a. **[1-PRE]:[3] "A wear assembly for excavating equipment"[4]**

---

**Jones[5]**



**Wear Assembly**    *FIG. 1*

---

Jones discloses this preamble, stating "excavating tooth 10 in accordance with the present invention includes a point 12, an adapter 13, and a lock 14." Ex-1013, 4:55-56; Ex-1002, ¶ 45.

---

[3] The limitations of the Challenged Claims are identified according to the claims key shown in Ex-1022 and Ex-1002, ¶ 35.

[4] Insofar as the preamble of any Challenged Claim is limiting, Petitioner included teachings for each such preamble without conceding it is limiting.

[5] For readability, Petitioner has removed extraneous lead lines in this figure and other figures below.

12

### b.    [1-1]:  "a base secured to the excavating equipment"

**Jones**



Jones discloses this limitation, describing "[t]he adapter [the claimed base] includes a rear mounting or base end 18," which "is provided with a pair of bifurcated legs 22, 24 to straddle the lip of a bucket."  Ex-1013, 4:55-65; FIGS. 2, 40; Ex-1002, ¶ 46.

### c. [1-2]: "the base including a front end with a front wall and a pair of front bearing surfaces"

**Jones**



Jones discloses this limitation, describing "[n]ose 20 of adapter 13 has … a box-shaped tip portion 32 [the claimed front end]," which "includes front, top and bottom bearing faces 47-48 [the claimed front wall and pair of bearing surfaces]." Ex-1013, 5:13-15; 5:44-51; FIG. 2; Ex-1002, ¶ 47.

### d.   [1-3]:  "a rear end with at least one recess defining a pair of rear bearing surfaces"

**Jones**



Jones in view of Liess discloses this limitation.  *See* Ex-1002, ¶ 48.  Jones describes "[n]ose 20 of adapter 13 has a rear body portion 30 [the claimed rear end]," which "is defined by a pair of side walls 34, 35, top and bottom walls 38, 39, and bearing faces 42 [the claimed pair of rear bearing surfaces]."  Ex-1013, 5:13-17; FIGS. 2, 6.  Thus, Jones discloses a projection defining a pair of bearing faces 42 (*see* FIGS. 2, 6) on both the top and bottom walls 38, 39.  *Id.*  It would have been obvious to a POSITA to invert the projection of Jones to the claimed recess as it would have been a known and predictable technique to improve a similar device to solve a known problem (e.g., withstanding "laterally directed forces").  *See* Ex-1002, ¶ 48.

15

**Liess**



Moreover, Jones discloses loading challenges facing excavating teeth, such as being "subjected to heavy loading by large forces applied in a wide variety of directions. As a result, the points must be firmly secured to the adapter to withstand not only axial forces but vertical and laterally directed forces as well." Ex-1013, 1:20-26.  To provide "enhanced stability to the mounting of the point," Jones teaches:

> [T]he nose of the adapter and the socket of the point are provided with bearing faces which extend substantially parallel to the longitudinal axis of the tooth. The bearing faces are able to better resist the vertical

thrust and moment forces which are applied during vertical loading on
the front end of the point.

*Id.,* 2:26-33.

Similarly, Liess describes "the tooth is also subject to side loads and generally
vertical loads in either direction which tend to pivot the tooth upon the adapter." Ex-
1014, 1:71-75.  Liess states that an objective is "to resist side loads on the tooth and
to minimize the effect of bending forces arising at the juncture between the tooth
and its supporting adapter." *Id*., 1:16-23.  Accordingly, Liess teaches "flanges 19
and 21 are of irregular cross section so that they extend inwardly toward the nose
portion 16 [the claimed base] along their longitudinal centerline." *Id*., 2:58-60.
Liess also states "nose portion 16 is formed to generally mate with the flanges 19
and 21 [the claimed recess defining a pair of rear bearing surfaces] so that these
structures may cooperate to resist generally horizontal pivoting of the tooth upon the
adapter." *Id*., 2:58-64; FIGS. 2-3.  In other words, Liess discloses a recess defining
a pair of bearing surfaces (e.g., V-shaped recess) in the rear end of the top and bottom
walls 38, 39 of the nose portion 16 mating with V-shaped projections (i.e., 31, 32)
extending from the top and bottom inner surfaces of tooth 11.  *See id*., 1:55; FIGS.
1, 3; Ex-1002, ¶ 48.

It would have been obvious to a POSITA to modify at least one of the
projections of Jones, each of which defines a pair of bearing faces 42, to be a recess

defining a pair of rear bearing surfaces as taught by Liess (e.g., V-shaped recess) to further meet Jones's objective of withstanding "laterally directed forces."  *See* Ex-1002, ¶ 48.  Doing so would merely amount to applying a known and predictable solution, from a finite number of solutions, to improve a similar device to solve a known problem and would have been "obvious to try."  *See id.*

Alternatively, it would have been obvious to a POSITA to modify the rear body portion 30 of Jones to include at least one recess defining a pair of rear bearing surfaces (e.g., between bearing faces 42 on top wall 38 and/or bottom wall 39 of Jones) as taught by Liess as such modification would be using a known solution to improve a similar device in the same way.  *See id.*  For the reasons described above, that modification would likewise serve to satisfy Jones's objective to "withstand not only axial forces but vertical and laterally directed forces as well."  *See* Ex-1013, 1:21-24; Ex-1002, ¶ 48.

### e.   [1-4]:  "and a lock bearing surface"

**Jones**



Jones discloses this limitation, describing "point 12 is releasably secured to adapter 13 by lock 14," which is "an extensible lock member which includes a casing 90 and a lock pin 92."  Ex-1013, 6:35-38; FIG. 7.  Further, Jones discloses "outer surface 101 is fit within hole 103 [the claimed lock bearing surface] in sidewall 35 of adapter 13," where "outer surface 101 and hole 103 are preferably D-shaped (FIG. 9) to ensure mounting of the lock in its proper orientation."  *Id*., 6:42-48; Ex-1002, ¶ 49.

### f.   [1-5]:  "a wear member including a rearward-opening socket for receiving the base"

**Jones**



Jones discloses this limitation, describing "[p]oint 12 [the claimed wear member] has … a rearwardly opening socket 16 for receiving nose 20."  Ex-1013, 4:59-61; FIG. 3; Ex-1002, ¶ 50.

### g.   [1-6]:  "and an opening"

**Jones**



Jones discloses this limitation, describing "[p]oint 12 includes a hole 145 [the claimed opening] in at least one of the sidewalls 147."  Ex. 1013, 7:21-24; FIG. 3; Ex-1002, ¶ 51.

### h.   [1-7]:  "the socket having a longitudinal axis"

**Jones**



Jones discloses this limitation as shown above and identifies a longitudinal axis 45.  *See* Ex-1013, 5:24-27; FIGS. 2-3; Ex-1002, ¶ 52.

### i. [1-8]: "including (i) a front end with a front surface transverse to the longitudinal axis to bear against the front wall on the base"

**Jones**



Jones discloses this limitation, describing "socket 16 comprises a box-shaped front portion 64 [the claimed front end] at its apex." Ex-1013, 5:67-6:1; FIGS. 2-3. Further, Jones discloses the front portion 64 includes a front bearing face 67 [the claimed front surface] transverse to the longitudinal axis and is adapted to abut bearing face 47 of the nose 20. *See id.*, 6:2-5; FIGS. 2-3; Ex-1002, ¶ 53.

### j.   [1-9]: "and a top stabilizing surface and a bottom stabilizing surface to bear against the front bearing surfaces on the base"

**Jones**



Jones discloses this limitation, describing "[f]ront portion 64 includes … top and bottom bearing faces [] 68 [the claimed top and bottom stabilizing surfaces] which are adapted to abut bearing faces [] 48 of nose 20 [the claimed front bearing surfaces]." Ex-1013, 6:2-5; FIGS. 2-3; Ex-1002, ¶ 54.

### k. [1-10]: "(ii) a rear end with a top wall, a bottom wall and side walls extending rearward from the front end"

**Jones**



FIG. 3

Jones discloses this limitation, describing "socket 16 comprises a box-shaped front portion 64 at its apex and a generally wedge-shaped rear cavity 66 [the claimed rear end]." Ex-1013, 5:67-6:2; FIG. 3. Jones teaches "[t]op and bottom walls 78, 79 of cavity 66" and "[c]avity 66 further includes sidewalls 74, 75," and FIG. 3 illustrates these walls extend rearward of the front portion 64. *Id.*, 6:6-9, 12-14; FIG. 3; Ex-1002, ¶ 55.

l. **[1-11]: "at least one of the top and bottom walls including a pair of rear stabilizing surfaces inclined relative to each other in different transverse directions so as to laterally converge inward toward a central location along the respective top or bottom wall to define an inward projection"**

Jones



Rear Stabilizing Surfaces

Jones in view of Liess discloses this limitation. *See* Ex-1002, ¶ 56. Jones discloses that its nose 20 includes a projection defining the pair of bearing surfaces 42. *See id.* In FIGS. 3 and 6, Jones depicts "cavity 66 includes bearing faces 72 [the claimed pair of rear stabilizing surfaces] which are adapted to abut bearing faces 42" and that bearing faces 72 are configured in a manner that satisfies this limitation. *Id.*, 6:5-6; FIGS. 2-3, 5-6. It would have been obvious to a POSITA to invert the recess of Jones's cavity 66 to the claimed projection as it would have been a known and predictable solution to improve a similar device to solve a known problem (e.g., withstanding "laterally directed forces"). *See* Ex-1002, ¶ 56.

25

**Liess**



Moreover, FIG. 3 of Liess shows each of top and bottom walls 19, 21 of nose portion 16 includes a pair of stabilizing surfaces configured in a manner that satisfies this limitation (i.e., V-shaped projections 31, 32). *See id.* As described at [1-3], Jones and Liess acknowledge the known problems of vertical and horizontal loading on the tooth and adapter, and Liess teaches V-shaped projections on its tooth mating with V-shaped recesses on its nose as a solution to resist horizontal pivoting of the tooth upon the adaptor. *See id.* Thus, it would have been obvious to a POSITA to modify at least one of the projections of Jones to be V-shaped as taught by Liess. *See id.* Such a modification would solve a known problem by using a known and predictable solution to improve a similar device and would have been "obvious to try." *See id.* Furthermore, it is commonly understood by a POSITA that increased

26

contact between surfaces with inward projections—e.g., use of a Phillips head or "cross-head" screwdriver—distribute stress and transmit loads more effectively. *See id*.

> **m.  [1-12]: "and positioned to bear against the rear bearing surfaces in the at least one recess in the base to resist both vertical and horizontal loads during excavating"**

Jones in view of Liess discloses this limitation. *See id*., ¶ 57.  As described above, Jones discloses the cavity 66 having rear bearing faces 72 of the recess positioned to bear against rear bearing faces 42 of the projection of nose 20 "to withstand not only axial forces but vertical and laterally directed forces as well." Ex-1013, 1:20-26.  Likewise, Liess discloses V-shaped projections 31, 32 along flanges 19 and 21 to bear against rear bearing surfaces of V-shaped recesses in the top and bottom walls 38, 39 of nose portion 16 to resist generally horizontal pivoting of the tooth upon the adapter.  *See* Ex-1014, 2:58-64; FIGS. 2-3.  Liess further teaches, "[t]he relation of the flanges 19, 21 with the tapered adapter nose portion 16 tend to prevent pivoting of the tooth in a vertical plane." *Id*., 2:16-20.

Thus, it would have been obvious to modify the cavity 66 and nose 20 of Jones to include V-shaped projections and recesses as taught by Liess to resist horizontal and vertical loading as such modification would solve a known problem by using a known and predictable solution to improve a similar device. *See* Ex-1002, ¶ 57.

27

n.   **[1-13]: "said top stabilizing surface, said bottom stabilizing surface, and each said rear stabilizing surface axially extending substantially parallel to the longitudinal axis"**



Jones discloses this limitation, describing that "rear bearing faces 42 and tip bearing faces 48 [the claimed top and bottom stabilizing surfaces] each extend substantially parallel to axis 45 to provide a stable framework for supporting point 12 under loading in vertical directions." Ex-1013, 5:51-55; FIGS. 2-3, 6. FIG. 6

shows that in order to align with bearing faces 42 of nose 20, bearing faces 72 of cavity 66 are also substantially parallel to the longitudinal axis 45. *See id*. A POSITA would have been motivated to keep the bearing faces 72 of cavity 66 substantially parallel to the longitudinal axis 45 "to provide a stable framework for supporting point 12 under loading in vertical directions" as taught by Jones. Ex-1013, 5:51-55; FIGS. 2, 3, 6; Ex-1002, ¶ 58.

Moreover, at the time of the invention, it was known in the art to have at least a portion of a rear end of a socket and adapter be parallel to the longitudinal axis in order to help maintain the wear member on the base. *See* Ex-1002, ¶ 58; Ex-1016, U.S. Patent No. 3,196,956 ("Ratkowski"). Furthermore, during prosecution, Applicant argued in an amendment, dated October 23, 2017, that the combination of U.S. Patent No. 5,778,571 to Pasqualini et al. in view of Liess and U.S. Patent No. 6,735,890 to Carpenter et al. ("Carpenter '890") failed to disclose all the features of the claim, in part because the cited references did not disclose bearing surfaces axially extending substantially parallel to the longitudinal axis. *See* Ex-1005. Liess, however, demonstrates V-shaped bearing surfaces with flanges 19 and 21 that "extend inwardly toward the nose portion 16 along their longitudinal centerline," while Jones teaches bearing surfaces axially extending substantially parallel to the longitudinal axis. *See* Ex-1002, ¶ 58; Ex-1017, Japanese Patent Publication No. S50-132703 ("Teraoka").

29

o.   **[1-14]: "a lock received into the opening of the wear member and in contact with the lock bearing surface on the base to hold the wear member to the excavating equipment"**

**Jones**





Jones discloses this limitation, stating "point 12 is releasably secured to adapter 13 by lock 14," which is described as "an extensible lock member which includes a casing 90 and a lock pin 92."  Ex-1013, 6:35-38; FIG. 7.  Further, Jones

teaches that casing 90 includes an outer surface 101 "fit within hole 103 in sidewall 35 of adapter 13." *Id.*, 6:42-48. Moreover, Jones states "[p]oint 12 includes a hole 145 in at least one of the sidewalls 147," further noting that "[h]ole 145 is provided with a bearing face 151," where "the transversely converging portion of face 151 engages the bearing face of the lock pin [92] for locking and tightening of the point onto the adapter." *Id.*, 7:21-47; FIGS. 1, 3; Ex-1002, ¶ 59.

### 2. Claims 2-7:

| | |
|---|---|
| [2-1] "A wear assembly in accordance with claim 1 wherein the base includes a plurality of the recesses each with a pair of the rear bearing surfaces," | As noted at [1-3], Jones in view of Liess discloses this limitation.  *See* Ex-1002, ¶ 60. |
| [2-2] "and the top and bottom walls of the wear member each includes a pair of said rear stabilizing surfaces to define one said projection and to bear against the rear stabilizing faces in one said recess in the base." | As noted at [1-11] and [1-12], Jones in view of Liess discloses this limitation. *See* Ex-1002, ¶ 61. |

31

| | |
|---|---|
| [3-1] "A wear assembly in accordance with claim 1 wherein said pair of rear stabilizing surfaces of the wear member collectively defines a V-shaped formation." | Liess discloses at least one pair of rear stabilizing surfaces of the wear member defining a V-shaped formation. Ex-1014, 2:58-61; FIG. 3.<br><br>For the reasons provided with respect to claim 1, it would have been obvious to a POSITA to modify the top wall 78 and the bottom wall 79 of Jones to further include the pair of rear stabilizing surfaces defining the V-shaped formation as shown and described in Liess.<br><br>*See* Ex-1002, ¶ 62. |
| [4-1] "A wear assembly in accordance with claim 1 wherein said pair of rear stabilizing surfaces of the wear member collectively defines a curved formation." | As noted at [1-11] and [1-12], Jones in view of Liess discloses the inclusion of rear stabilizing surfaces in each of the top and bottom walls of the wear member.<br><br>Further, it would have been obvious, in view of FIGS. 3 and 7 of Liess, to modify Liess's V-shaped formation to define a curved formation to soften the hard corners and simplify the manufacturing process and/or it would have been obvious to try different formations as such are known solutions to this known problem.<br><br>*See* Ex-1002, ¶ 63. |
| [5-1] "A wear assembly in accordance with claim 1 wherein the base includes a plurality of side recesses each with a pair of side stabilizing faces," | As noted at [8-3], Jones in view of Liess discloses the claimed limitation.<br><br>*See* Ex-1002, ¶ 64. |

| | |
|---|---|
| [5-2] "and each said side wall of the wear member includes a pair of side stabilizing surfaces inclined relative to each other in different transverse directions so as to laterally converge inward toward a central location along the respective side wall and positioned to define an inward projection" | As noted at [8-11], Jones in view of Liess discloses the claimed limitation.<br><br>*See* Ex-1002, ¶ 65. |
| [5-3] "and bear against a respective pair of the side stabilizing faces on the nose to resist both vertical and horizontal loads during excavating," | As noted at [8-12], Jones in view of Liess discloses the claimed limitation.<br><br>*See* Ex-1002, ¶ 66. |
| [5-4] "and each said side stabilizing face and each said side stabilizing surface axially extends substantially parallel to the longitudinal axis." | As noted at [8-13], Jones in view of Liess discloses the claimed limitation.<br><br>*See* Ex-1002, ¶ 67. |
| [6-1] "A wear assembly in accordance with claim 1 wherein said pair of rear stabilizing surfaces of the wear member extends from one of the side walls to the other side wall of the socket." | As noted at [1-11] and [1-12], Jones in view of Liess discloses the inclusion of rear stabilizing surfaces in each of the top and bottom walls of the wear member.<br><br>FIG. 3 of Liess discloses the pair of stabilizing surfaces of the wear member extending from one side wall to the other side wall.  Further, it would have been obvious, in view of FIG. 3 of Liess, to modify the rear stabilizing surfaces as claimed.<br><br>*See* Ex-1002, ¶ 68. |

| [7-1] "A wear assembly in accordance with claim 1 wherein said top stabilizing surface, said bottom stabilizing surface, and each said rear stabilizing surface axially extends at angle of no more than about five degrees to the longitudinal axis." | As noted at [1-13], Jones in view of Liess discloses the claimed limitation.<br><br>*See* Ex-1002, ¶ 69. |
|---|---|

### 3.  Claim 8:

For the reasons discussed, Jones discloses limitations [8-PRE]-[8-2], [8-4]-[8-10], and [8-14] of claim 8.  *See* Sections VI(A)(1)(a)-(c), (e)-(k), (o); Ex-1002, ¶ 70.  The remaining limitations of claim 8 (i.e., limitations [8-3] and [8-11]-[8-13]) are discussed below.

### a.   [8-3]: "a rear end having opposite sides with a side recess in each of the sides"

**Jones**



Jones in view of Liess discloses this limitation, with Jones stating "[t]he rear body portion 30 is defined by a pair of side walls 34, 35, top and bottom walls 38,

39, and bearing faces 42." Ex-1013, 5:13-15; FIGS. 2, 6.  For the same reasons as described at [1-3], it would have been obvious to a POSITA to modify the rear body portion 30 of Jones to further include a plurality of side recesses each with a pair of side stabilizing faces (e.g., between bearing faces 42 on each of side walls 34, 35 of Jones), in view of the teachings of Liess, to further meet Jones's objective of withstanding "not only axial forces but vertical and laterally directed forces as well." Ex-1013, 1:21-24; Ex-1014, 1:73-75; 2:16-20.  Such a modification would have been obvious because it would solve a known problem by using a known and predictable solution to improve a similar device and would have been "obvious to try."  *See* Ex-1002, ¶ 71.

**b.**   **[8-11]: "the side walls each including a pair of side stabilizing surfaces inclined relative to each other in different transverse directions so as to laterally converge inward toward a central location along the respective side wall"**

**Jones**



Jones in view of Liess discloses this limitation, with Jones stating, "[l]ikewise, cavity 66 includes bearing faces 72 which are adapted to abut bearing faces 42."  Ex-1013, 6:5-6; FIGS. 2-3.  Referring to FIGS. 3, 5, and 6, the bearing faces 72 (e.g., at top and bottom of each sidewall 74, 75) are configured in a manner to satisfy this limitation.  *See* Ex-1002, ¶ 72.  For the reasons described at [1-3] and [1-11], it would have been obvious to modify at least one of the projections of Jones to be a recess defining a pair of rear bearing surfaces or to modify the rear body portion 30 of Jones to further include at least one recess defining a pair of rear bearing surfaces.  *See id*.  Given that the socket of Jones already appreciates the benefit of having bearing faces

36

at each sidewall inclined relative to each other in different transverse directions (i.e., 72), it would also have been obvious to modify each side wall of Jones to include similarly configured side stabilizing surfaces in view of the teachings of Liess.  *See id*.  Such a modification would solve a known problem by using a known and predictable solution to improve a similar device and would have been "obvious to try."  *See id*.

In prosecuting claim 33 of U.S. Application No. 13/746,210, a later version of which issued as claim 8 in the '662 Patent, Applicant argued in the October 2017 amendment that the combination of U.S. Patent No. 2,921,391 to Opsahl in view of Carpenter '890 and Liess failed to disclose the claimed wear assembly.  See Ex-1005. For example, Applicant asserted, "Liess teaches away from any sidewalls for the socket as recited in the claims as being difficult to manufacture and preventing the inspection of the rate of wear," citing Liess at 1:24-33 ("the deep cavity is particularly difficult and expensive to form by either of these processes") and 34-36 ("[a]n additional problem arises from the complete enclosure of the supporting adapter within the tooth").  *Id.*.  Applicant also concluded that "Liess teaches away from a closed cavity," alleging, "[s]idewalls would limit the operator's ability to determine wear, *the* intended use of the configuration."  *Id.* (emphasis added.)

MPEP § 2145 recites, "The fact that a 'combination would not be made by businessmen for economic reasons' does not mean that a person of ordinary skill in

37

the art would not make the combination because of some technological incompatibility." *In re Farrenkopf*, 713 F.2d 714, 718, 219 USPQ 1, 4 (Fed. Cir. 1983). That Liess recites that tips with a "deep-tapered cavity" may be "difficult and expensive to form" would not preclude a POSITA from modifying Jones in view of Liess.

MPEP § 2145 also states, "The test for obviousness is not whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference .... Rather, the test is what the combined teachings of those references would have suggested to those of ordinary skill in the art." *In re Keller*, 642 F.2d 413, 425, 208 USPQ 871, 881 (CCPA 1981). Jones is presently relied upon to disclose a socket including side walls, and in fact, such tips are well known in the art and conventionally used. *See also, e.g.*, Ex-1015. Even assuming that Liess fails to teach an earth-working tip having prominent side walls, the benefits of such configuration are not rendered irrelevant; limiting an operator's ability to determine wear is not the sole concern addressed by Liess. As extensively described herein (e.g., at [1-3], [1-11]-[1-13]), Liess and Jones focus on providing increased strength to components of an excavating tooth to better resist loads applied thereto from multiple directions. Accordingly, these combined teachings would have suggested to a POSITA to modify Jones, as described above, to include a pair of side stabilizing surfaces configured in a manner to satisfy this limitation in view of Liess.

38

  c. **[8-12]: "and positioned to bear against complementary surfaces in respective side recesses in the base to resist both vertical and horizontal loads during excavating"**

Jones in view of Liess discloses this limitation.  *See* Ex-1002, ¶ 73.  As described at [8-3] and [8-11], it would have been obvious to modify Jones in view of the teachings of Liess.  *See id*.  Referring to [1-12], the flanges 19 and 21 are positioned to bear against the nose portion 16 to resist both vertical and horizontal loads during excavating.  *See id*.  Thus, it would have been obvious to modify the cavity 66 and nose 20 of Jones to include Liess's V-shaped projections and recesses to resist horizontal and vertical loading as such modification would solve a known problem by using a known and predictable solution to improve a similar device and would have been "obvious to try."  *See id*.

  d. **[8-13]: "said top stabilizing surface, said bottom stabilizing surface, and each said side stabilizing surface axially extending substantially parallel to the longitudinal axis"**

Jones discloses this limitation, describing that bearing faces 42, 72 and top and bottom bearing faces 67, 68 "extend substantially parallel to axis 45."  Ex-1013, 6:28-29.  Further, for the same reasons as provided at [1-13], it would be obvious to incorporate the above-described configuration of Liess (i.e., at [8-3] and [8-11]) into the tooth of Jones, such that the side stabilizing faces and side stabilizing surfaces of a modified Jones, e.g., as described at [8-3] and [8-11], would also axially extend substantially parallel to its longitudinal axis.  *See* Ex-1002, ¶ 74.

4.      **Claims 9-13:**

| | |
|---|---|
| [9-1] "A wear assembly in accordance with claim 8 wherein each said pair of side stabilizing surfaces of the wear member collectively defines a V-shaped formation." | As noted at [3-1] and [8-11], Jones in view of Liess discloses the claimed limitation.<br><br><br><br>*See* Ex-1002, ¶ 75. |
| [10-1] "A wear assembly in accordance with claim 8 wherein each said pair of side stabilizing surfaces of the wear member collectively defines a curved formation." | As noted at [4-1] and [8-11], Jones in view of Liess discloses the claimed limitation.<br><br>*See* Ex-1002, ¶ 76. |
| [11-1] "A wear assembly in accordance with claim 8 wherein each said pair of side stabilizing surfaces of the wear member extends from the top wall to the bottom wall." | As noted at [6-1] and [8-11], Jones in view of Liess discloses the claimed limitation.<br><br>*See* Ex-1002, ¶ 77. |
| [12-1] "A wear assembly in accordance with claim 8 wherein the side stabilizing surfaces of the wear member are located near the rear end of the wear member." | As noted at [8-11], Jones in view of Liess discloses the inclusion of side stabilizing surfaces in the wear member.<br><br>Further, as shown in FIGS. 3 and 6 of Jones and FIGS. 2 and 3 of Liess, side stabilizing surfaces are configured as |

| | claimed.<br><br>*See* Ex-1002, ¶ 78. |
| --- | --- |
| [13-1] "A wear assembly in accordance with claim 8 wherein each said side stabilizing surface axially extends at an angle of no more than about five degrees to the longitudinal axis." | As noted at [8-13], Jones in view of Liess discloses the claimed limitation.<br><br>*See* Ex-1002, ¶ 79. |

### 5.  Claim 14:

For the reasons above, Jones discloses limitations [14-PRE]-[14-7].  *See* Sections VI(A)(1)(a)-(b), (f)-(k), (o); Ex-1002, ¶ 80.  As discussed at [1-11]-[1-13], Jones in view of Liess discloses limitations [14-7]-[14-9].  *See* Sections VI(A)(1)(l)-(n); Ex-1002, ¶ 80.

### 6.  Claims 15-20:

| [15-1] "A wear member in accordance with claim 14 wherein the top and bottom walls each includes a pair of said rear stabilizing surfaces." | As noted at [2-1] and [2-2], Jones in view of Liess discloses the claimed limitation.<br><br>*See* Ex-1002, ¶ 81. |
| --- | --- |

41

| | |
|---|---|
| [16-1] "A wear member in accordance with claim 14 wherein said pair of rear stabilizing surfaces collectively defines a V-shaped formation." | As noted at [3-1], Jones in view of Liess discloses the claimed limitation.<br><br><br><br>*See* Ex-1002, ¶ 82. |
| [17-1] "A wear member in accordance with claim 14 wherein said pair of rear stabilizing surfaces collectively defines a curved formation." | As noted at [4-1], Jones in view of Liess discloses the claimed limitation.<br><br>*See* Ex-1002, ¶ 83. |
| [18-1] "A wear member in accordance with claim 14 wherein said pair of rear stabilizing surfaces extends from one of the side walls to the other side wall." | As noted at [6-1], Jones in view of Liess discloses the claimed limitation.<br><br>*See* Ex-1002, ¶ 84. |
| [19-1] "A wear member in accordance with claim 14 wherein each said side wall includes a pair of side stabilizing surfaces inclined relative to each other in different transverse directions so as to laterally converge inward toward a central location along the respective side wall to define an inward projection and bear against complementary surfaces in a recess in the base to resist both vertical and horizontal loads | As noted at claims 1 and 8, Jones in view of Liess discloses the claimed limitation.<br><br>*See* Ex-1002, ¶ 85. |

| | |
|---|---|
| during excavating, and wherein each said side stabilizing surface axially extends substantially parallel to the longitudinal axis." | |
| [20-1] "A wear member in accordance with claim 14 wherein each said rear stabilizing surface axially extends at an angle of no more than about five degrees to the longitudinal axis." | As noted at [7-1], Jones in view of Liess discloses the claimed limitation. *See* Ex-1002, ¶ 86. |

### 7.     Claim 21:

For the reasons above, Jones discloses limitations [21-PRE]-[21-6].   *See* Sections VI(A)(1)(a)-(b), (f)-(k), (o); Ex-1002, ¶ 87.  As discussed at [1-11]-[1-13] and [8-11]-[8-13], Jones in view of Liess discloses limitations [21-7]-[21-9].  *See* Sections VI(A)(1)(l)-(n), VIII(A)(3)(b)-(d); Ex-1002, ¶ 87.

### 8.     Claims 22-26:

| | |
|---|---|
| [22-1] "A wear member in accordance with claim 21 wherein said pair of side stabilizing surfaces of the wear member collectively defines a V-shaped formation." | As noted at [9-1], Jones in view of Liess discloses the claimed limitation. *See* Ex-1002, ¶ 88. |
| [23-1] "A wear member in accordance with claim 21 wherein said pair of side stabilizing surfaces of the wear member collectively defines a curved formation." | As noted at [10-1], Jones in view of Liess discloses the claimed limitation. *See* Ex-1002, ¶ 89. |
| [24-1] "A wear member in accordance with claim 21 wherein said pair of side stabilizing surfaces extends from the top wall to the bottom wall." | As noted at [11-1], Jones in view of Liess discloses the claimed limitation. *See* Ex-1002, ¶ 90. |

| [25-1] "A wear member in accordance with claim 21 wherein the side stabilizing surfaces are located near the rear end." | As noted at [12-1], Jones in view of Liess discloses the claimed limitation. <br><br> *See* Ex-1002, ¶ 91. |
|---|---|
| [26-1] "A wear member in accordance with claim 21 wherein said top stabilizing surface, said bottom stabilizing surface, and each said side stabilizing surface axially extends at an angle of no more than about five degrees to the longitudinal axis." | As noted at [13-1], Jones in view of Liess discloses the claimed limitation. <br><br> *See* Ex-1002, ¶ 92. |

For the reasons above, claims 1-26 are obvious over Jones in view of Liess, and the Board should grant this Petition to institute IPR of these claims. *See* Ex-1002, ¶ 93.

**B.    Ground 2:  Claims 8-13 and 21-26 Are Obvious over Livesay in View of the Knowledge and Skill of a POSITA**

Livesay issued October 8, 1996, more than one year prior to the '662 Patent's earliest filing date of February 17, 2006. *Compare* Ex-1001 *with* Ex-1015. Therefore, Livesay is prior art under § 102(b). Livesay was not considered by the Examiner during prosecution of the '662 Patent. *See* Ex-1001.

**Livesay**



Livesay discloses a tooth assembly 10 having a tip 12, an adapter 14, and a retaining mechanism 16 for retaining the tip on the adaptor. *See* Ex-1015, 1:6-8; 2:39-41; FIG. 1.  The adapter 14 "has a rearward implement mounting portion 68 and a forwardly extending nose portion 70." *Id*., 2:61-63; FIG. 1.  "[A] rearwardly opening socket 24 is defined in the rearward mounting portion 20 of the tip 12." *Id*., 2:47-49; FIG. 2.  Further, Livesay discloses retaining mechanism 16 that "includes

a dual flex pin 102, first and second pin receiving openings 56, 58 in the tip 12, a generally vertically oriented and shaped pin slot 90 in the nose portion 70 of the adapter 14, and a detent mechanism 72." *Id.*, 3:7-11; FIG. 8.

    1.    **Claim 8:**

        a.    **[8-PRE]: "A wear assembly for excavating equipment"**

**Livesay**



**Wear Assembly**

Livesay discloses this preamble, stating "a tooth assembly 10 is illustrated and adapted for mounting to an earthworking implement (not shown), such as a loader bucket or ripper tool." *Id.*, 1:36-39; FIG. 1; Ex-1002, ¶ 96.

### b.   [8-1]:  "a base secured to the excavating equipment"

**Livesay**



Livesay discloses this limitation, stating "[t]he tooth assembly 10 includes a tip 12, an adapter 14 [the claimed base] and a retaining mechanism 16."  Ex-1015, 2:39-41; FIGS. 1, 4.  Livesay further discloses, "the adapter 14 has a rearward implement mounting portion 68 … adapted for mounting to an earthworking implement (not shown), such as a loader bucket or ripper tool."  *Id.*, 2:36-39, 61-63; FIGS. 1, 4; Ex-1002, ¶ 97.

### c.   [8-2]:  "the base including a front end with a front wall and front bearing surfaces"

**Livesay**



Livesay discloses this limitation, stating "the adapter 14 has … a forwardly extending nose portion 70 … configured to mate with the socket 24 of the tip 12 and includes a pair of parallel spaced apart transverse surfaces 74 [the claimed front bearing surfaces] interconnected by a generally flat end surface 76 [the claimed front wall]."  Ex-1015, 2:61-66; FIG. 1.  The transverse surfaces 74 and flat end surface 76 are, collectively, the "front end."  *See* Ex-1002, ¶ 98.

### d. [8-3]: "a rear end having opposite sides with a side recess in each of the sides"

**Livesay**



Livesay discloses this limitation, describing "nose portion 70 also includes a pair of sides 78, 80 [portion of the claimed rear end] … each terminate with one of a pair of recesses 82, 84." Ex-1015, 2:66-3:6; FIGS. 1, 4. "The one side 78 of the nose portion also includes a generally horizontally oriented clearance groove 100 [the claimed side recess on one side] that intersects with the slot 90." *Id.*, 3:63-65; FIGS. 1, 4. "A second groove (not shown, but similar to groove 100) [the claimed side recess on an opposite side] may be provided on the opposite side of the adapter nose portion 70." *Id.* Thus, Livesay discloses a "rear end" having opposite sides 78, 80 with each of these sides having a side recess (e.g., groove 100). *See* Ex-1002, ¶ 99.

49

e.      [8-4]:  "and a lock bearing surface"

**Livesay**



Livesay discloses this limitation, stating "the central portion 96 of the slot defines a forward pin contacting surface 98 [the claimed lock bearing surface]." Ex-1015, 3:61-63; FIGS. 4, 6; Ex-1002, ¶ 100.

f.      [8-5]:  "a wear member including a rearward-opening socket for receiving the base"

**Livesay**



Livesay discloses this limitation, describing "[t]he tip 12 [the claimed wear

member] has a forward end portion 18 operative to engage the material being worked and a rearward mounting portion 20 adapted to connect the tip 12 to the adapter 14." Ex-1015, 2:41-43; FIGS. 2-3.  "As best shown in FIGS. 2 and 3, a rearwardly opening socket 24 is defined in the rearward mounting portion 20 of the tip 12."  *Id.*, 2:47-49; FIGS. 2-3; Ex-1002, ¶ 101.

### g.    [8-6]:  "and an opening"

**Livesay**



Livesay discloses this limitation, describing "first and second pin receiving openings 56, 58 [the claimed opening] in the tip 12 …."  Ex-1015, 3:7-11; FIGS. 1, 3; Ex-1002, ¶ 102.

51

### h.   [8-7]:  "the socket having a longitudinal axis"

**Livesay**



Livesay discloses this limitation, describing "a forwardly and rearwardly extending longitudinal axis 22 along which the tip 12 and adapter 14 are disposed." Ex-1015, 2:44-46; FIGS. 1-2; Ex-1002, ¶ 103.

i.      **[8-8] "including (i) a front end with a front surface transverse to the longitudinal axis to bear against the front wall on the base"**



Livesay discloses this limitation, teaching "[t]he socket 24 is defined by a top wall 28, a bottom wall 30, a pair of side walls 32, 34 and a load bearing bottom surface 26 [the claimed front surface]."  Ex-1015, 2:49-51; FIGS. 2-3.  Livesay further states "[i]nternally, the inner surfaces of the top and bottom walls end with a pair of parallel spaced apart load bearing surfaces 36, which are disposed in the socket between the pair of sidewalls 32, 34 and adjacent the load bearing bottom

53

surface 26 [collectively, the claimed front end]." *Id.*, 2:54-58; FIGS. 2-3.  Livesay

recites "[d]uring such operation, any forces acting directly on the front of the forward

end portion 18 of the tip 12 is transferred through the load bearing bottom surface

26 directly to the generally flat end surface 76 of the adapter 14." *Id.,* 5:35-38; FIGS.

2, 6; Ex-1002, ¶ 104.

> **j.    [8-9]: "and a top stabilizing surface and a bottom stabilizing surface to bear against the front bearing surfaces on the base"**

**Livesay**



Livesay discloses this limitation, teaching the socket 24 includes "a pair of

parallel spaced apart load bearing surfaces 36 [the claimed top and bottom stabilizing

surfaces], which are disposed in the socket between the pair of sidewalls 32, 34 and

adjacent the load bearing bottom surface 26." Ex-1015, 2:54-58; FIGS. 2-3.  Livesay

further describes "the pair of parallel spaced apart load bearing surfaces 36 on the

tip 12 are adapted to make mating contact with the pair of parallel spaced apart

transverse surfaces 74 on the adapter 14." *Id.*, 4:10-15; FIGS. 2, 6.  Moreover,

Livesay teaches "[a]ny downward force acting on the forward end portion 18 of the tip 12 is transmitted from the top one of the pair of parallel spaced apart load bearing surfaces 36 to the top one of the pair of parallel spaced apart transverse surfaces 74 of the adapter 14." *Id.*, 5:38-43; FIGS. 2, 6; Ex-1002, ¶ 105.

### k.    [8-10]: "(ii) a rear end with a top wall, a bottom wall and side walls extending rearward from the front end"

**Livesay**



Livesay discloses this limitation, as shown in annotated FIGS. 2 and 3 and as described in [8-8]. *See* Ex-1015, FIGS. 2-3. Livesay teaches "[t]he socket 24 is

defined by a top wall 28, a bottom wall 30, a pair of side walls 32, 34 ….." *Id.*, 2:49-51; FIGS. 2-3; Ex-1002, ¶ 106.

l.  **[8-11]: "the side walls each including a pair of side stabilizing surfaces inclined relative to each other in different transverse directions so as to laterally converge inward toward a central location along the respective side wall"**

**Livesay**



Side Stabilizing Surfaces

Livesay discloses this limitation, teaching the side walls 32 include a detent projection 124 [inclusive of the claimed pair of side stabilizing surfaces].  *See* Ex-1015, 3:66-67; FIGS. 2-3, 8.  Livesay adds "[a]s best shown in FIG. 3, detent

56

projection [124] is preferably provided by a longitudinally extending rib 126 formed on and projecting inwardly from the side wall 32 of the socket 24." *Id*., 3:67-4:3; FIGS. 2-3, 8.  Referring to FIG. 8, the detent projection 124 defines a pair of side stabilizing surfaces that are inclined relative to each other in different transverse directions so as to laterally converge inward toward a central location along the respective side wall.  *See id*.; FIG. 8.  Livesay discloses "[t]he clearance groove 100 in the adapter nose portion 70 is constructed to receive the detent projection 124 when the tip 12 is mounted onto the adapter 14." *Id*., 4:31-34; FIGS. 1, 4, 6.

In accordance with Livesay's teaching that a second groove, similar to groove 100, may be provided on an opposite side of the adapter 14 (*see* [8-3]), the socket would include a second detent projection 124 on the opposite side to mate with this second groove.  *See id*., 3:63-65; Ex-1002, ¶ 107.  Alternatively, even if the second detent projection were found not to be disclosed, including a second detent projection to mate with the second groove would have been obvious to a POSITA in view of the teachings of Livesay itself or the knowledge in the art as a mere duplication of a known part and a known solution to a known problem with a finite number of predictable solutions.  *See* Ex-1002, ¶ 107; *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417-18, 82 USPQ2d 1385 (2007).

m.    **[8-12]: "and positioned to bear against complementary surfaces in respective side recesses in the base to resist both vertical and horizontal loads during excavating"**

**Livesay**



Livesay discloses the structure recited in this limitation, including clearance grooves (e.g., groove 100 and groove on opposite side) in the nose portion 70 are constructed to receive detent projections (e.g., projection 124 and projection on opposite side), each of which includes a pair of stabilizing surfaces, when tip 12 is mounted onto adapter 14. *See* Ex-1015, 4:31-34; FIGS. 1, 4, 6. As shown in FIG.

1, for example, Livesay discloses that groove 100 includes interior surfaces [the claimed complementary surfaces].  *See id*.; FIG. 1.  As shown above, Livesay also discloses the claimed pair of side stabilizing surfaces and complementary surfaces in respective side recesses.  *See* Ex-1002, ¶ 108.

In this respect, Livesay also discloses the recited function of this limitation. *See id*.  Specifically, as groove 100 is constructed to receive projection 124, it follows that under certain loads, the pair of side stabilizing surfaces of the projection will bear against complementary surfaces in respective side recesses in the base.  A POSITA would understand Livesay to disclose side stabilizing surfaces being positioned to bear against complementary surfaces in respective side recesses in the base as claimed because this engagement between such surfaces limits the forces placed on the pin.  *See* Ex-1015, 4:53-56; Ex-1002, ¶ 108.  Because Livesay discloses that such side stabilizing surfaces bear against such complementary surfaces, these surfaces, to at least some degree, ***resist both vertical and horizontal loads during excavating***.  *See id*.  (emphasis added).

To the extent Patent Owner could argue that such side stabilizing surfaces and complementary surfaces do not bear against one another and thus do not resist vertical and horizontal loads during excavating, however, it would have been obvious to a POSITA to modify the projection 124 and/or the groove 100 of Livesay such that surfaces of the projection 124 would be positioned to bear against

complementary surfaces in the groove 100 to provide such resistance to limit the force on the pin 102.  *See id*.  For example, Livesay describes "the tip 12 is replaceably but securely retained on an adapter 14 solely by the use of a pin 102, without the need for other components to maintain the pin in place."  Ex-1015, 4:53-56.  A POSITA would also understand that the stability afforded to the pin 102 by the projection 124 results from stability of the detent itself, and thus, configuring the projection 124 and/or groove 100 to increase the amount of contact therebetween to enhance such stability would have been obvious.  *See* Ex-1002, ¶ 108.

Moreover, it would have been obvious in view of the knowledge of a POSITA to adapt the projection 124 and/or the groove 100 of Livesay such that surfaces of the projection 124 would be positioned to bear against complementary surfaces in the groove 100 to better facilitate resistance of both vertical and horizontal loads during excavating.  *See id*.  Specifically, it was well known in the art to use complementary recesses and projections on corresponding sides of wear members, bases, and other related portions of wear assemblies to provide resistance against loads applied from different directions.  *See id*.  Prior art references before and after Livesay demonstrate this knowledge.  *See id*.

**Emrich**





For example, U.S. Patent No. 4,326,348 ("Emrich"), which issued April 27, 1982 and was not cited during prosecution of the '662 Patent, discloses that sidewalls 17 of wear cap 15 include rails 19 which are received within slots 20 disposed on the adapter sidewalls and bearing surfaces 34.  *See* Ex-1018, 3:41-53; FIGS. 2, 4; Ex-1002, ¶ 108.

---

**Livesay '138**



---

U.S. Patent No. 5,432,138 ("Livesay '138"), which was filed April 4, 1994, issued June 13, 1995, and was not cited during prosecution of the '662 Patent, also discloses a tooth assembly 10 having a tip 12 and an adapter 14. *See* Ex-1019, 3:13-14; FIG. 1. Within the adapter 14, "each of the longitudinally extending grooves 48, 50 has vertically opposed load bearing surfaces 52." *Id.* 3:42-44; FIG. 12. Livesay '138 also recites "the vertically opposed load bearing surfaces 52 in the longitudinally extending groove 48 are in position for load bearing contact with the respective upper and lower load transferring surfaces 96 on the raised lug 90." *Id.*, 5:24-28. Additionally, Livesay '138 discloses "the upward or downward reaction force in the ear 38 is either shared or totally taken by the contact between the respective ones of the vertically opposed load bearing surfaces 52 of the longitudinally extending groove 48 and the respective one of the upper and lower load transferring surfaces 96 of the adapter 14." *Id.*, 7:18-24. Livesay '138 notes the

benefit of this interaction, reciting, "the loads being subjected to the tip 12 is [*sic*] directed to the adapter 14 without creating any resultant forces tending to cause the tip 12 to slip off of the adapter 14." *Id*., 7:24-27.  *See* Ex-1002, ¶ 108.

**Jones '442**



U.S. Patent Publication No. 2005/0229442 ("Jones '442"), which was filed March 30, 2004, published October 20, 2005, and was not cited during prosecution of the '662 Patent, also discloses a wear assembly including a wear member 28 secured to a boss 20, which is welded to an excavating bucket lip 12.  *See* Ex-1020, ¶¶ 42-43, 45.  As shown above in FIG. 4, Jones '442 discloses that the boss 20 includes rails 24 that cooperate with flanges 82 of the wear member 28 "to prevent its movement away from the lip," further noting, "[a]lternatively, the rails could be formed on the wear member 28 and the slot in boss 20." *Id*., ¶¶ 46, 51; FIG.4.  With

respect to the rails 24 and a brace 30 supporting the same, Jones '442 recites "[s]uch support at the rear end of the rails is particularly advantageous in resisting vertical loads that tend to rotate or swing the wear member about the front digging edge of the lip." *Id.*, ¶ 47; Ex-1002, ¶ 108.

**Livesay '207**



Finally, U.S. Patent Publication No. 2004/0060207 ("Livesay '207"), which was filed September 27, 2002, published April 1, 2004, and was not cited during prosecution of the '662 Patent, also discloses a tip assembly 10 including an adapter 16 and a replaceable wear member 18. *See* Ex-1021, ¶ 20; FIG. 1. The adapter 16 includes a raised rib 58, which defines sides 64, and upper and lower raised shoulders 60, each of which defines inner surfaces 68 parallel to the central axis 26. *Id.*, ¶ 23; FIG. 2. The wear member 18 includes a groove 98 defining opposed surfaces 100, 102 and upper and lower surfaces 106, where raised rib 58, groove 98, upper and lower surfaces 106, and inner surfaces 68 "are also configured to assist in the transferring of vertical load forces generated during a digging operation." *Id.*, ¶ 27; FIGS 2, 6; Ex-1002, ¶ 108.

In view of the above, it would have been obvious to a POSITA to adapt the surfaces of the detent projection 124 of Livesay to be constructed to bear against the complementary surfaces in the clearance groove 100 to resist both vertical and horizontal loads during excavating. *See* Ex-1002, ¶ 108. Knowledge in the art such as that taught by Emrich, Livesay '138, Jones '442, and Livesay '207 would have encouraged a POSITA to employ sufficient complementary recesses and projections on corresponding sides of wear members and bases as a known and predictable solution to provide resistance against loads applied from different directions. *See id.*

65

Moreover, Livesay describes that "the top and bottom load bearing surfaces 42, 44 of the ears 38, 40 are adapted for load bearing contact with the respective upper and lower load bearing surfaces 86, 88 within the recesses 82, 84," where the ears 38, 40 and the recesses 82, 84 are positioned on the respective sides of the tip 12 and the adapter 14.  *See* Ex-1015, 4:10-18; FIGS. 1-6.  However, Jones, in discussing a prior art design having "rearward tabs received in recesses for providing additional resistance to the moment forces," cautions that "since the tabs extend outward from the body of the point they possess less resistance strength."  Ex-1013, 1:61-65.  Accordingly, in view of such teachings, it would have been obvious to a POSITA to modify the detent projection 124 and/or the clearance groove 100 of Livesay to provide additional resistance against both vertical and horizontal loads during excavating.  *See* Ex-1002, ¶ 108.

n.   **[8-13]: "said top stabilizing surface, said bottom stabilizing surface, and each said side stabilizing surface axially extending substantially parallel to the longitudinal axis"**

**Livesay**



Livesay discloses this limitation, describing "a pair of parallel spaced apart load bearing surfaces 36 [the claimed top and bottom stabilizing surfaces]." Ex-1015, 2:54-56; FIG. 3. Further, Livesay describes that the "detent projection [including the claimed side stabilizing surfaces] is preferably provided by a longitudinally extending rib 126 formed on and projecting inwardly from the side wall 32 of the socket 24." *Id.*, 3:66-4:4; FIG. 3. As shown in FIG. 3, Livesay discloses that load bearing surfaces 36 and detent projection 124 are substantially parallel to longitudinal axis 22. *See* Ex-1002, ¶ 109.

o.  **[8-14]: "a lock received into the opening of the wear member and in contact with the lock bearing surface on the base to hold the wear member to the excavating equipment"**

**Livesay**



Livesay discloses this limitation, describing "[t]he retaining mechanism 16 includes a dual flex pin 102 [the claimed lock], first and second pin receiving openings 56, 58 in the tip 12." Ex-1015, 3:7-11; FIGS. 1, 6, 8. Further, Livesay recites "[w]ith the pin 102 in its fully assembled position as illustrated, the spring force of the pin by being flexed in the longitudinal direction is operative to maintain

the side surface 122 of its mid portion 110 in intimate contact with the pin contacting surface 98 of the slot 90 of the adapter 14." *Id.*, 5:17-21.  As noted at [8-12], Livesay describes "the tip 12 is replaceably but securely retained on an adapter 14 solely by the use of a pin 102, without the need for other components to maintain the pin in place." *Id.*, 4:53-56; Ex-1002, ¶ 110.

### 2.    Claims 9-13:

| [9-1] "A wear assembly in accordance with claim 8 wherein each said pair of side stabilizing surfaces of the wear member collectively defines a V-shaped formation." | Livesay recites, "The detent mechanism 72 also includes a fixed detent projection 124." Ex-1015, 3:66-67; FIG. 8, below. <br><br>  <br><br> As shown in FIG. 8, the pair of rear stabilizing surfaces define a V-shaped formation as claimed. <br><br> *See* Ex-1002, ¶ 111. |
|---|---|
| [10-1] "A wear assembly in accordance with claim 8 wherein each said pair of side stabilizing surfaces of the wear member collectively defines a curved formation." | As noted at [9-1] and shown in FIG. 8, above, the pair of rear stabilizing surfaces define a curved formation as claimed. <br><br> *See* Ex-1002, ¶ 112. |

| | |
|---|---|
| [11-1] "A wear assembly in accordance with claim 8 wherein each said pair of side stabilizing surfaces of the wear member extends from the top wall to the bottom wall." | As noted at [8-11], Livesay discloses a pair of rear stabilizing surfaces in the wear member. <br><br> Further, it would have been obvious to expand the surfaces of the detent projection 124 to extend from the top wall to the bottom wall along with surfaces of sides 78, 80 of nose 70 and/or the pin 102 to promote better stability between socket 24 and nose 70 and/or provide a greater surface area to resist loads and prevent pin 102 from becoming dislodged. Additionally or alternatively, it would have been obvious to try different formations to improve stability and/or resistance to loads. <br><br> *See* Ex-1002, ¶ 113. |
| [12-1] "A wear assembly in accordance with claim 8 wherein the side stabilizing surfaces of the wear member are located near the rear end of the wear member." | As shown, for example, in FIGS. 1, 3, 4, 6, 8 of Livesay, the side stabilizing surfaces are configured as claimed. <br><br> *See* Ex-1002, ¶ 114. |
| [13-1] "A wear assembly in accordance with claim 8 wherein each said side stabilizing surface axially extends at an angle of no more than about five degrees to the longitudinal axis." | As noted at [8-13], Livesay discloses the claimed limitation. <br><br> *See* Ex-1002, ¶ 115. |

### 3.   Claim 21:

For the reasons discussed, Jones discloses limitations [21-PRE]-[21-7] and

[21-9]. *See* Sections VI(B)(1)(a)-(b), (f)-(l), (n), (o); Ex-1002, ¶ 116. With respect

70

to [21-8], for the reasons discussed at [8-12], Livesay, in view of the knowledge of a POSITA, discloses the claimed limitation that the pair of side stabilizing surfaces are "positioned to bear against complementary surfaces in respective side recesses in the base to resist both vertical and horizontal loads during excavating."  *See* Ex-1002, ¶ 116.

### 4.  Claims 22-26:

| | |
|---|---|
| [22-1] "A wear member in accordance with claim 21 wherein said pair of side stabilizing surfaces of the wear member collectively defines a V-shaped formation." | As noted at [9-1], Livesay discloses the claimed limitation.<br><br>*See* Ex-1002, ¶ 117. |
| [23-1] "A wear member in accordance with claim 21 wherein said pair of side stabilizing surfaces of the wear member collectively defines a curved formation." | As noted at [10-1], Livesay discloses the claimed limitation.<br><br>*See* Ex-1002, ¶ 118. |
| [24-1] "A wear member in accordance with claim 21 wherein said pair of side stabilizing surfaces extends from the top wall to the bottom wall." | As noted at [11-1], Livesay discloses the claimed limitation.<br><br>*See* Ex-1002, ¶ 119. |
| [25-1] "A wear member in accordance with claim 21 wherein the side stabilizing surfaces are located near the rear end." | As noted at [12-1], Livesay discloses the claimed limitation.<br><br>*See* Ex-1002, ¶ 120. |

| [26-1] "A wear member in accordance with claim 21 wherein said top stabilizing surface, said bottom stabilizing surface, and each said side stabilizing surface axially extends at an angle of no more than about five degrees to the longitudinal axis." | As noted at [13-1], Livesay discloses the claimed limitation.<br><br>*See* Ex-1002, ¶ 121. |
|---|---|

For the reasons above, claims 8-13 and 21-26 are obvious over Livesay in view of the knowledge and skill of a POSITA, and the Board should grant this Petition to institute IPR of these claims.  *See* Ex-1002, ¶ 122.

## VII.   DISCRETIONARY DENIAL UNDER 35 U.S.C. §§ 314(A) OR 35 U.S.C. § 325(D) IS NOT WARRANTED

Discretionary denial under § 314(a) may be determined upon consideration of the following factors, which relate to events in a co-pending district court litigation concerning the same patent challenged in an IPR petition:

(1)    whether the court granted a stay or evidence exits that one may be granted if a proceeding is instituted;

(2)    proximity of the trial court's trial date to the Board's projected statutory deadline for a final written decision;

(3)    investment in the parallel proceeding by the court and the parties;

(4)    overlap between issues raised in the petition and in the parallel proceeding;

(5)    whether the petitioner and the defendant in the parallel

proceeding are the same party; and

(6)    other circumstances that impact the Board's exercise of discretion, including the merits.

*Apple Inc. v. Fintiv, Inc.,* IPR2020-00019, Paper 11, at 7-8 (PTAB March 20, 2020) (precedential) ("*Fintiv*") (citing *NHK Spring Co. v. Intri-Plex Techs., Inc.,* IPR2018-00752, Paper 8, at 20 (PTAB Sept. 12, 2018) (precedential)).

Separately, discretionary denial under § 325(d) may be determined upon consideration of the following factors, which relate to matters previously presented to the Office concerning the same patent challenged an IPR petition:

(1)    the similarities and material differences between the asserted art and the prior art involved during examination;

(2)    the cumulative nature of the asserted art and the prior art evaluated during examination;

(3)    the extent to which the asserted art was evaluated during examination, including whether the prior art was the basis for rejection;

(4)    the extent of overlap between the arguments made during examination and the manner in which petitioner relies on the prior art;

(5)    whether petitioner has pointed out sufficiently how the examiner

erred in its evaluation of the asserted prior art; and

(6)     the extent to which additional evidence and facts presented in the

petition warrant reconsideration of the prior art arguments.

*Advanced Bionics, LLC v. Med-El Elektromedizinische Geräte GmbH,* IPR2019-

01469, Paper 6, at 9, n.10 (PTAB Feb. 13, 2020) (precedential) (citing *Becton,*

*Dickinson & Co. v. B. Braun Melsungen AG*, IPR2017-01586, Paper 8, at 17-18

(PTAB Dec. 15, 2017) (precedential in part)).

### A.     The *Fintiv* Factors Weigh in Favor of Institution

The *Fintiv* factors weigh against discretionary denial.

### 1.     Factor 1 (Possibility of a Stay) Favors Institution

First, for Factor 1, the Board examines whether the district court would grant

a stay if the Board institutes IPR.  *See Fintiv*, *supra*, at 7-8, n.12 ("[T]he district

court, in considering a motion for stay, may consider similar factors related to the

amount of time already invested by the district court [Factor 3] and proximity of the

trial date to the Board's deadline for a final written decision [Factor 2].").

Petitioner intends to move for a stay of the Litigation upon institution, and a

previous stay decision by Magistrate Judge Hall[6] in a case analogous to this one

---

[6] District Judge Andrews referred the Litigation to Magistrate Judge Hall "for all

purposes through the case dispositive motion deadline."  Ex-1009, Dkt. 6.

suggests she would grant Petitioner's motion.  *See Wildcat Licensing Wi LLC v. Bayerische Motoren Werke AG*, Case No. 19-cv-834-MN-JLH, 2020 WL 6940038 (D. Del. Nov. 25, 2020), attached as Ex-1010.[7]  Factors 2 and Factor 3, discussed in more detail below, further indicate that the district court would likely issue a stay because the Litigation will still be in its early stages with no significant resources expended or orders issued by the time the Board institutes IPR.  Thus, this factor favors granting the Petition.

### 2.     Factor 2 (Trial Date) Favors Institution

Factor 2 compares the proximity of the district court's trial date with the Board's statutory deadline for issuing a final written decision.  *See Fintiv*, *supra*, at 9.  If the Board institutes IPR, the statutory deadline for its final written decision would likely fall in April 2023, well ahead of the district court's trial date in September 2023.  *See* Ex-1012, ¶ 21.  Thus, this factor favors granting the Petition.

### 3.     Factor 3 (Investment in the Litigation) Favors Institution

For Factor 3, the Board considers the investment in the parallel proceeding by the district court and the parties, including the amount and type of work completed

---

[7] Magistrate Judge Hall denied a stay pending IPR in a case much more advanced than this one.  *See 3Shape AS v. Align Technology*, Case No. 1-18-cv-00886, Dkt. 368 (D. Del. Feb. 26, 2021), attached as Ex-1011.

at the time of the institution decision.  *See Fintiv*, *supra*, at 8.  This factor favors institution "[i]f, at the time of the institution decision, the district court has not issued orders related to the patent at issue in the petition."  *Id*. at 10.  It also favors institution if "much other work remains" for the parties in the litigation, such as if fact discovery is ongoing, expert reports are not yet due, and substantive motion practice still remains.  *See Sotera Wireless, Inc. v. Masimo Corporation*, IPR2020-01019, Paper 12, at 16-17 (PTAB Dec. 1, 2020) (precedential).

Moreover, Factor 3 relates to Factors 1 and 2 because less work completed in a co-pending litigation suggests that it is less advanced and that a stay would be more likely, and, thus, institution would not lead to duplicative efforts or conflicting results.  *See Fintiv*, *supra*, at 8.  Finally, Factor 3 favors institution if "petitioner filed the petition expeditiously."  *Id*. at 11.

Factor 3 favors institution here.  The district court has not expended substantial time or resources in the Litigation because there have been no discovery disputes to date, and the court has not issued and likely will not issue orders related to the patent before institution.  Although the *Markman* hearing may occur before institution, a claim construction ruling will likely issue after.  *See* Ex-1012, ¶ 13 (noting a ruling could be expected sixty days after the hearing).

Additionally, much work remains for the parties.  Document production is ongoing and no depositions have been scheduled.  Claim construction has just begun

and will culminate with the *Markman* hearing in March 2022.  Fact discovery ends in October 2022.  The exchange of expert reports will be completed in January 2023. Dispositive motions are due in April 2023 with a hearing set for May 2023.  The final pretrial conference is in August 2023 with trial beginning in September 2023. *See id*.  In short, the Litigation is young with substantial claim construction, fact discovery, expert reports, dispositive motions, and trial preparation remaining.  *See Sotera*, Paper 12, at 16-17; *see also Wildcat,* 2020 WL 6940038.

Finally, Petitioner diligently filed this Petition after the parties exchanged initial contentions in September and October 2021 (*see* Ex-1009, Dkt. 36, 38) and well before the statutory deadline in April 2022.  *See Fintiv*, *supra*, at 11; *see also Sotera*, Paper 12, at 17 (finding petitioner diligent when it filed its petition two months after initial invalidity contentions and two weeks before the statutory deadline).  Thus, Factor 3 favors institution, which also makes Factors 1 and 2 more heavily favor institution.  *See Fintiv*, *supra*, at 8.

### 4.    Factor 4 (Same Invalidity Issues) Favors Institution

Under Factor 4, the Board evaluates "concerns of inefficiency and the possibility of conflicting decisions" when substantially identical prior art is submitted in both the district court and the petition.  *See Fintiv*, *supra*, at 12.  Here, Petitioner mitigates such concerns by stipulating that, if IPR is instituted, Petitioner will not pursue the same grounds raised in this Petition in the parallel Litigation.  *See*

*Sand Revolution II, LLC v. Continental Intermodal Grp.–Trucking, LLC*, IPR2019-01393, Paper 24, at 11-12, n.5 (PTAB June 16, 2020) (informative) (finding a similar stipulation weighed in favor of institution).  This factor weighs in favor of institution.

### 5.   Factor 5 (Same Party) is Neutral

Although Petitioner is a party to the co-pending Litigation, the Litigation is in a nascent stage and a trial is scheduled to occur well after the final written decision in this proceeding, reducing the weight of this factor under *Fintiv*.  *See Weatherford U.S., L.P. v. Enventure Global Technology, Inc.*, IPR2021-00107, Paper 11, at 11 (PTAB May 26, 2021) ("The record shows that Petitioner and Patent Owner are, respectively, the defendant and complainant in the parallel district court proceeding …. Thus, this factor does not weigh against or for exercising discretion to deny institution.") (citations omitted).  Thus, this factor is neutral.

### 6.   Factor 6 (Additional Factors) Favors Institution

The Board should also view the strength of the merits of this Petition as favoring institution.  *See Fintiv, supra,* at 14 ("[I]f the merits of a ground raised in the petition seem particularly strong on the preliminary record, this fact has favored institution.").   As shown above, Petitioner has presented clear and persuasive obviousness challenges in two separate grounds, the first involving a combination of two references (i.e., Jones in view of Liess), which the Examiner did not present during examination of the '662 Patent, and the second involving prior art (i.e.,

Livesay) that the was not before the Examiner during prosecution of the '662 Patent.

In sum, the *Fintiv* factors favor institution.

### B.    The *Advanced Bionics* Factors Weigh in Favor of Institution

The obviousness combinations and arguments presented in this Petition were not considered by the Examiner during examination of the application that issued as the '662 Patent.  *See* Ex-1005.  Regarding Ground 1, although Jones and Liess were both of record during prosecution, there is no indication that the Examiner considered Jones, either alone or in combination with other references, including Liess, in initially determining patentability of the '662 Patent.  The Examiner did not issue any rejections involving Jones or otherwise indicate that the claims of the '662 Patent were evaluated in view of Jones, either alone or in combination with other references.  The silence regarding Jones in the prosecution history indicates that the Examiner erred in misapprehending or overlooking material aspects of Jones relevant to the patentability of the Challenged Claims.  As demonstrated above in Ground 1, Jones discloses nearly all limitations of the Challenged Claims, save the particular claimed configurations of the projections in the side wall, for which Petitioner relies on Liess. Had the Examiner not misapprehended or overlooked Jones, a rejection based on Jones would have issued.

In *Solvay USA, Inc. v. Worldsource Enter., LLC*, IPR2020-00768, Paper 12 (PTAB Sept. 25, 2020), the Board declined to exercise its discretion to deny a

petition under § 325(d) in similar circumstances.  In *Solvay*, the Board considered a petition that presented an obviousness challenge based on multiple references, each of which were of record during prosecution, where some of the references were applied by the examiner in rejections during prosecution.  *Id.* at 8.  One of the references, however, was not applied in a rejection or otherwise discussed by the examiner during prosecution.  *Id.*

Relying on *Advanced Bionics* and the *Becton, Dickinson* factors, however, the Board in *Solvay* concluded the petitioner had sufficiently shown that the "Office erred in a manner material to the patentability of the challenged claims," stating "[t]he record does not reflect any substantive consideration of [one of the asserted prior art reference] CN400 in combination with [the other asserted prior art references] Iannotta or Kole, as presented in the Petition." *Id.* at 9.  The Board acknowledged that the petitioner identified disclosures from the overlooked reference that were relevant to the claims at issue and, based on that substantive discussion, concluded that the petitioner "had shown sufficiently that the Examiner erred in the evaluation of the asserted prior art in a manner material to the patentability of the challenged claims." *Id.*  The Board upheld its decision regarding § 325(d) in response to the patent owner's request for rehearing.  *See Solvay USA, Inc. v. Worldsource Enter., LLC*, IPR2020-00768, Paper 30 (PTAB Mar. 1, 2021).

Again, the current Petition presents similar circumstances.  Here, as Petitioner

has shown in detail in Ground 1, Jones discloses nearly all limitations of the Challenged Claims. Petitioner relies on Liess for its disclosure of certain configurations of the projections in the side wall, much as the Examiner did repeatedly throughout examination. *See e.g.*, Ex-1005 at 157, 217, 267, 302. But the file history record is silent regarding any "substantive consideration" of Jones, either alone or in combination with other references, such as Liess.

Regarding Ground 2, Livesay was not of record during prosecution and, therefore, each of the *Advanced Bionics* factors above weighs in favor of institution. Moreover, none of the references cited above for the purpose of demonstrating the knowledge and skill of a POSITA—*i.e.*, Emrich, Livesay '138, Jones '442, and Livesay '207—were of record during prosecution, and, therefore, in the same way as Livesay itself, reliance on those references favor institution under *Advanced Bionics*.

Thus, the *Advanced Bionics* framework favors institution.

## VIII. CONCLUSION

For the foregoing reasons, Petitioner requests that the Board institute IPR of the '662 Patent.

Dated:  November 16, 2021

Respectfully submitted,

*/ Paul M. Ulrich /*

Paul M. Ulrich (Reg. No. 46,404)
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Tel: (513) 698-5156
Fax: (513) 698-5157
Email: pulrich@ulmer.com

Matthew E. Vale (Reg. No. 64,993)
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Tel: (513) 698-5036
Fax: (513) 698-5037
Email: mvale@ulmer.com

Paul J. Linden (Reg. No. 74,058)
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Tel: (513) 698-5096
Fax: (513) 698-6097
Email: plinden@ulmer.com

Attorneys for Petitioner

## <u>CERTIFICATION OF WORD COUNT UNDER 37 C.F.R. § 42.24(D)</u>

Petitioner certifies that the word count in this Petition is 13,130 words as counted by the word processing program used to generate this Petition, where such word count excludes: the table of contents, the table of authorities, any mandatory notices under 37 C.F.R. § 42.8, the certificate of service, this certification of word court, the appendix of exhibits, and the payment of fees section. This Petition is in compliance with the 14,000 word limit set forth in 37 C.F.R. § 42.24(a)(1)(i).

Date: November 16, 2021          */ Paul M. Ulrich /*_____
                                 Paul M. Ulrich (Reg. No. 46,606)

## <u>PAYMENT OF FEES UNDER 37 C.F.R. § 42.103</u>

The fee set forth in 37 C.F.R. § 42.15(a) for requesting IPR of the Challenged Claims was paid at the time of filing this petition.  Petitioner authorizes the United States Patent and Trademark Office ("the Office") to charge Deposit Account No. 501884 for any additional fees that may be due in connection with this petition.

Date: November 16, 2021          */ Paul M. Ulrich /*_____
                                 Paul M. Ulrich (Reg. No. 46,606)

## <u>**CERTIFICATE OF SERVICE**</u>

Pursuant to 37 C.F.R. §§ 42.6(e)(4)(i) et seq. and 42.105(b), the undersigned

certifies that on November 16, 2021, he caused a complete and accurate copy of this

Petition and all supporting exhibits to be served by Federal Express, cost prepaid, to

the Patent Owner by serving the correspondence address of record as follows:

> ESCO Group LLC
> Legal -IP Group
> 2141 NW 25th Avenue
> Portland, Oregon 97210-2578

Date: November 16, 2021          */ Paul M. Ulrich /*_____
                                 Paul M. Ulrich (Reg. No. 46,606)