IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ESCO GROUP LLC, | ) | |
| | ) | |
| Plaintiff, | ) | **REDACTED - PUBLIC VERSION** |
| | ) | |
| v. | ) | C.A. No. 20-1679-WCB-MPT |
| | ) | |
| DEERE & COMPANY, | ) | ████████████ |
| | ) | |
| Defendant. | ) | |

**ESCO'S OPPOSITION TO
DEERE'S MOTIONS FOR SUMMARY JUDGMENT**

OF COUNSEL:
Brian D. Sieve, P.C.
Paul D. Collier
Jeremy D. Roux
Xaviere Giroud
Tareq M. Alosh
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Dated: April 5, 2023

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (6232)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

I. **Nature and State of the Proceedings** ................................................................. 1

II. **Introduction and Summary of Argument** ......................................................... 1

III. **Deere Literally Infringes the '175 Patent as a Matter of Law.** ...................... 2

IV. **Deere's Doctrine of Equivalents Arguments are Wrong** .............................. 5

V. **Deere's Indirect Infringement Arguments Have No Merit** ........................... 9

    A. The Complaint Put Deere on Notice of the Asserted Patents. ............... 9

    B. The Locks and Adapters of the Accused Products are not Suitable for Substantial Non-Infringing Uses .......................................................... 11

VI. **Deere's Attempt to Relitigate the Court's Prior Rulings is Improper** ...................... 13

    A. Deere's Indefiniteness Arguments are Untimely ................................. 13

    A. Deere's Indefiniteness Arguments Lack Merit ................................... 15

        (i) "substantially parallel to the longitudinal axis" ........................ 15

        (ii) "to resist both vertical and horizontal loads during excavating" ............. 17

VII. **Carpenter '771 Does Not Anticipate the '662 Patent** ................................. 18

    A. Deere Impermissibly Combines Distinct Embodiments to Allege Anticipation ............................................................................................. 18

    B. Deere Misrepresents the Record ........................................................... 20

VIII. **Conclusion** ....................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barkes v. First Corr. Med., Inc.*,
  No. CIV. A. 06-104-JJF, 2008 WL 1808569 (D. Del. Apr. 18, 2008) ....................................14

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*,
  262 F.3d 1258 (Fed. Cir. 2001)..........................................................................................5

*Brown v. 3M*,
  265 F.3d 1349 (Fed. Cir. 2001)........................................................................................20

*Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*,
  No. 11-01011-AG, 2014 WL 12597150 (C.D. Cal. June 13, 2014)....................................25

*Cont'l Cirs. LLC v. Intel Corp.*,
  915 F.3d 788 (Fed. Cir. 2019)............................................................................................8

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*,
  868 F.2d 1251 (Fed. Cir. 1989).......................................................................................6, 7

*Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*,
  838 F.3d 1224 (Fed. Cir. 2016)........................................................................................18

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
  42 F. Supp. 2d 385 (D. Del. 1999)....................................................................................15

*Enzo Biochem, Inc. v. Applera Corp.*,
  599 F.3d 1325 (Fed. Cir. 2010)........................................................................................19

*EyesMatch Ltd. v. Facebook, Inc.*,
  No. CV 21-111-RGA-JLH, 2021 WL 4501858 (D. Del. Oct. 1, 2021) ..............................10

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Inc.*,
  535 U.S. 722 (2002).............................................................................................................8

*Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*,
  93 F.3d 766 (Fed. Cir. 1996).........................................................................................3, 4

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
  438 F.3d 1354 (Fed. Cir. 2006)........................................................................................12

*ICON Health & Fitness, Inc. v. Tonal Sys., Inc.*,
  No. CV 21-652-LPS-CJB, 2022 WL 611249 (D. Del. Feb. 7, 2022)..............................10, 11

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001)............................................................................5

*Interval Licensing LLC v. AOL, Inc.*,
  766 F.3d 1364 (Fed. Cir. 2014)..........................................................................17

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  No. CV 18-452-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019) .............................2, 10, 12

*Merck & Co., Inc. v. Teva Pharms. USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005)............................................................................3

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
  55 F.4th 1354 (Fed. Cir. 2022) ............................................................................5

*Nat'l Presto Indus., Inc. v. W. Bend Co.*,
  76 F.3d 1185 (Fed. Cir. 1996)............................................................................9

*Nevro Corp. v Bos. Sci. Corp.*,
  955 F.3d 35 (Fed. Cir. 2020)........................................................................18, 19

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
  491 F.3d 1342 (Fed. Cir. 2007)..........................................................................25

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc)............................................................5

*Princeton Digital Image Corp. v. Ubisoft Ent. SA*,
  No. CV 13-335-LPS-CJB, 2017 WL 6337188 (D. Del. Dec. 12, 2017) ......................11

*Schering Corp. v. Amgen, Inc.*,
  25 F. Supp. 2d 293 (D. Del. 1998)......................................................................15

*Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*,
  844 F.3d 1370 (Fed. Cir. 2017)..........................................................................16

*Tempo Lighting, Inc. v. Tivoli, LLC*,
  742 F.3d 973 (Fed. Cir. 2014)............................................................................5

*Välinge Innovation AB v. Halstead New England Corp.*,
  No. 16-1082-LPS-CJB, 2017 WL 5196379 (D. Del. Nov. 9, 2017) ..........................11

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997)..........................................................................................7, 9

*Wrinkl, Inc. v. Facebook, Inc.*,
  No. 20-CV-1345-RGA, 2021 WL 4477022 (D. Del. Sept. 30, 2021) ........................11

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
    528 F. Supp. 3d 247 (D. Del. 2021) ................................................................................10, 11

**Statutes**

35 U.S.C. §271(c) ...........................................................................................................12

**Rules**

Local Rule 7.1.5 .............................................................................................................14

**Other Authorities**

Marriam-Webster's New Collegiate Dictionary (9th ed. 1987) .......................................2

## I.     NATURE AND STATE OF THE PROCEEDINGS

ESCO Group LLC ("ESCO") filed its complaint against Deere & Company ("Deere") on December 10, 2020, asserting the '662 Patent.  (D.I. 1.)  ESCO subsequently filed an amended complaint on April 7, 2021, adding a claim that Deere is also infringing the '175 Patent.  (D.I. 11.)  Both patents relate to ground engaging technology for excavating equipment.  Fact and expert discovery have closed and a five-day trial is scheduled to begin September 18, 2023.  (D.I. 24.)

## II.    INTRODUCTION AND SUMMARY OF ARGUMENT

Deere's motion for summary judgment of non-infringement and invalidity of both the '662 and '175 Patents has no merit.  Deere's motion should be denied in its entirety for the following reasons:

(i)     Deere's contention that it does not literally infringe the '175 Patent is based solely on an erroneous construction of the patent's claims.  It is unclear why Deere failed to raise this proposed construction during the *Markman* hearing, but in any event, this is an issue of law for the Court to resolve.  Deere's proposed construction should be rejected because, among other things, it ignores the intrinsic record of the '175 Patent, resulting in inconsistent definitions of the terms.

(ii)    Deere's alternative contention that it does not infringe the '175 Patent under the doctrine of equivalents because there is supposedly insufficient evidence of equivalence is predicated on the same erroneous construction of the patent's claims, a misunderstanding of the law, and unfaithful account of the facts and evidence of record.

(iii)   Deere asserts it is entitled to summary judgment on ESCO's claims of indirect infringement of the '662 or '175 Patents because it had allegedly had no notice of the patents.  But as this Court has held, the complaint (and here the amended complaint) provides the required notice.  *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) (Bryson, J). Deere never acknowledges this dispositive case law.  In

addition, ESCO specifically provided Deere with notice that it was infringing the '662 Patent separate and apart from the complaint.  In addition, the factual record confirms there is no genuine dispute that components of the Accused Products have no substantial non-infringing uses.

(iv)   Deere's argument that certain terms of the '662 and '175 Patents are indefinite was already twice rejected by the Court.  Those rulings are law of the case, and there is no basis for Deere to reargue this issue now.

(v)   Deere's contention that the '662 Patent is anticipated over Carpenter '771 has no merit as a matter of law.  Deere impermissibly combines distinct embodiments, offers a contrived and inapt construction of the '662 Patent's claims, and contradicts the clear disclosure of Carpenter '771.

For the reasons that follow, the Court should deny Deere's motion for summary judgment in its entirety.

## III.   DEERE LITERALLY INFRINGES THE '175 PATENT AS A MATTER OF LAW.

As explained its motion, ESCO is entitled to summary judgment of infringement of the '175 Patent.  Deere's motion turns on the meaning of the term "extend from" or "extend rearward from," as used in the '175 Patent.  According to Deere, projections or bearing surfaces that "extend[] from the front thrust surface" require the front thrust surface to be "a starting point" for the projections or bearing surfaces.  (D.I. 195 ("Deere Op. Br.") at 9 (quoting Marriam-Webster's New Collegiate Dictionary (9th ed. 1987))).  Based on this interpretation, Deere asserts that the Accused Products cannot infringe the claims because they have "four large, beveled planar facets in between the accused front thrust surface and the accused side surfaces/projections."  (*Id.* at 6.)  Deere's argument fails as a matter of law for several reasons.

***First***, Deere's proffered construction of "extend from" is legally incorrect because it renders other terms of the '175 Patent claims meaningless.  The claims of '175 Patent recite

"extend[ing] from" in **conjunction** with the term "adjacent to." (*See, e.g.,* ESCO Op. Br., Ex. B, '175 Patent, claim 4 (a "transverse, inward projection in the front stabilizing end defined by bearing surfaces that are ***adjacent to and extend from*** the front thrust surface substantially parallel to the longitudinal axis"); *see also id.*, claim 6, 9, 13, 17 (similar).)[1]  The natural reading of the claims establishes that the term "extend from" refers to a ***direction***, whereas "adjacent to" refers to a location of the recited "surfaces."  Deere's reading of "extending from" as requiring some "starting point" would thus render the term "adjacent to" superfluous and is erroneous as a matter of law. *See Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 770 (Fed. Cir. 1996) (rejecting claim construction that "render[s] superfluous" other terms of the claim); *Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").

As detailed in ESCO's opening brief, the specification confirms that none of the terms require a front thrust surface as "a starting point" for the claimed projections and bearing surfaces. The '175 Patent describes "a front stabilizing end located ***adjacent the thrust faces*** 142 and 152 of the nose 108 and socket 120" and "top and bottom stabilizing surfaces 202a, 202b, 212a, and 212b [that] ***extend rearward from their respective thrust faces*** 142 and 152." ('175 Patent at 9:46–52.)  In depicting this "adjacent" and "extend[ing] rearward" relationship to the front "thrust surfaces," the figures of the '175 Patent consistently show ***a transition surface between*** "thrust faces 142 and 152" and the "top and bottom stabilizing surfaces 202a, 202b, 212a, and 212b," along with every other surface in the "front stabilizing end." (*See, e.g.,* '175 Patent, Figs. 4, 7 (transition in red, below).)  Deere ignores this clear disclosure in the '175 Patent because its

---

[1]  All emphasis added unless noted.

construction cannot reconcile the existence of a transition surface, and it is "inconsistent with the specification and drawings" of the '175 Patent. *Cryo-Trans*, 93 F.3d at 770.



**Second**, Deere's construction would require the term "extend" to have different, inconsistent meanings throughout the claims. Other claim limitations (which Deere does not take issue with) consistently use the term "extend" to refer to directions, not locations or a "starting point." For example, claim 4 uses this term to describe "a mounting section *extending* generally along a longitudinal axis" and a "front thrust surface *extending* generally transverse to the longitudinal axis." So, too, do claims 6–9, 11, 13, 15–17, 19, and 21, each consistently using "extend" to refer to directions within the claimed wear assemblies. Deere's construction of "extending from" as a "starting point" simply does not square with other limitations' ordinary use of "extend" as referring to directions. Deere's litigation-driven construction must be rejected because "claim terms are normally used *consistently* throughout the patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).

**Third**, the opinions of Deere's expert concerning the construction of "extend from" provide no support for Deere's argument. Dr. Klopp testified that, in his opinion, "adjacent to" means "nearby" and "*doesn't* [mean] touch." (ESCO Op. Br., Ex. R, 250:16–251:1; Deere Op. Br. 9 (quoting Klopp Dep. 241:13–242:3). But if "extending from" means "starting from," as Deere

4

now contends, then the limitations of "adjacent to and extending from" would require surfaces "nearby" but not touching one another, while *also* requiring surfaces starting from or "touching" one another. "Such a construction is illogical and does not accord with the plain import of the claim language." *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1336 (Fed. Cir. 2001).

  ***Finally***, Deere's reliance on a dictionary definition of "from" as meaning "starting from" is altogether misplaced. Extrinsic evidence "may not be used to vary, contradict, expand, or limit the claim language from how it is defined, even by implication, in the specification or file history." *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1269 (Fed. Cir. 2001). Rather than offer *any* discussion of the '175 Patent itself, Deere simply resorts to a cherry-picked definition to offer a construction completely "inconsistent with the more reliable intrinsic evidence." *Tempo Lighting, Inc. v. Tivoli, LLC*, 742 F.3d 973, 977 (Fed. Cir. 2014). That approach is wrong as a matter of law. *See Mosaic Brands, Inc. v. Ridge Wallet LLC*, 55 F.4th 1354, 1362 (Fed. Cir. 2022) (criticizing and rejecting claim construction argument that "offers no intrinsic evidence for this position" which relied on "only extrinsic dictionary definitions and attorney argument").

  In sum, the plain meaning of the claims and the intrinsic evidence proves that Deere's construction of "extend from" is incorrect. For the reasons detailed in ESCO's opening brief, the Court should give the '175 Patent claims their plain and ordinary meaning, and grant summary judgment of infringement accordingly.

## IV.  DEERE'S DOCTRINE OF EQUIVALENTS ARGUMENTS ARE WRONG.

  Deere relies on its erroneous construction of the "extending from" term in the '175 Patent claims, and then argues that "ESCO's expert did not provide any opinion regarding the applicability of the doctrine of equivalents to the 'extending from' limitation." (Deere Op. Br. 10.)

According to Deere, Mr. Holland instead "purported to collectively analyze multiple claim elements and limitations." (*Id.*)  Second, Deere contends that infringement under the doctrine of equivalents in precluded by "both amendment-based and argument-based estoppel." (*Id.* at 11.)  Finally, Deere contends that Mr. Holland's analysis is factually flawed because "it fails to compare the function, way, or result of the ***gap*** caused by the beveled planar facets" in the Accused Products.  (*Id.* at 12.)  Each of these arguments fails as a matter of law.

 ***First,*** Deere asserts that ESCO's expert purportedly "collectively analyze[d] multiple claim elements and limitations."  Under the doctrine of equivalents, "the term 'element' is used in the sense of a limitation of a claim" and "[a]n equivalent must be found for every ***limitation*** of the claim somewhere in an accused device."  *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1259 (Fed. Cir. 1989).  As Deere's own quotation of Mr. Holland's report shows, his equivalents analysis is provided for a ***single*** disputed limitation of the '175 Patent, specifically what Deere identifies as "limitation [8.13]."  (Deere Op. Br. 10 (quoting Holland Op. Rpt., Appx. B)).  Deere's allegation that Mr. Holland's analysis is legally insufficient because he analyzed "multiple claim elements" demonstrates that Deere misunderstands the term "element" in case law, and incorrectly looks for an equivalence analysis of each ***component within*** a claim limitation.  It is simply "not necessar[y]" to proffer an analysis of every "corresponding component" within a claim limitation.  *Corning*, 868 F.2d at 1259.  Mr. Holland's analysis of the sole disputed ***limitation*** in the '175 Patent claims is entirely proper.

 Regardless, Mr. Holland ***did*** analyze the single "component" that Deere contends is different between the Accused Products and the '175 Patent claims.  Deere contends that the projections must "start from" the front thrust surface and, though that construction is wrong (see *supra* § III), Mr. Holland offered an equivalents analysis under such a construction.  In fact,

Deere's brief quotes Mr. Holland's analysis addressing the scenario in which the claims would be construed such that "projections must somehow be ***immediately adjacent*** to the front thrust surface." (*E.g.,* ESCO Op. Br., Ex. E, Holland Op., Appx. B., at 30.)   In other words, the equivalents analysis addresses infringement even if claims somehow required projections and bearing surfaces "immediately adjacent to"—or as Deere calls it, "starting from"—the front thrust surface. (*Id.*)  Deere's allegation that Mr. Holland "did not provide any opinion of the doctrine of equivalents to the 'extending from' limitation" is nothing more than wordplay—Mr. Holland's analysis directly addressed the ***meaning*** of Deere's construction for the term "extending from," and explained why projections "starting from" or "immediately adjacent to" a front thrust surface would still infringe the '175 Patent under the doctrine of equivalents.  Such an analysis is proper as a matter of law, because the "essential inquiry [is whether] the accused product or process contain elements identical or equivalent to each claimed element of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997).

***Second***, Deere alleges that amendments during prosecution in which the terms "adjacent to" and "extending from" were introduced into the claims preclude a doctrine of equivalence analysis in this case. (Deere Op. Br. 11.)  That argument has no merit.  During prosecution, the claims of the '175 Patent were amended to include "inward projections" (and/or their bearing surfaces) "adjacent to and extending from" a front thrust surface, thus distinguishing the patent examiner's cited ESCO patent that discloses a "***rear end*** of the socket[] that include[s] inward projections."  (*Id.*, Ex. C, at 41.)  The arguments presented with those amendments are in accord. (*See id.*, Ex. C., at 55 ("Carpenter does not disclose any inward projections in ***the front end*** that define bearing surfaces that are ***adjacent to and extend from the front thrust surface*** ….")). Nothing in the prosecution of the '175 Patent surrendered projections ***immediately*** adjacent to—

or "starting from," as Deere calls it—a front thrust surface. Instead, the subject matter "between the original claim and the amended claim" relates to projections in the "rear end of [a] socket. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Inc.*, 535 U.S. 722, 740 (2002). Deere's unexplained accusations certainly do not demonstrate a "clear and unambiguous … disavowal of scope." *Cont'l Cirs. LLC v. Intel Corp.*, 915 F.3d 788, 798 (Fed. Cir. 2019) (quotation omitted).

    ***Finally***, Deere disputes the factual basis of Mr. Holland's equivalents analysis, arguing that "even if the Court were to allow it, the analysis is insufficient because it fails to compare the function, way, or result of the gap caused by the beveled planar facets" between the front thrust face and projections in the Accused Products. (Deere Op. Br. 12.) According to Deere, "ESCO's expert fail[s] to provide any testing or data to show equivalence" to these purported "beveled planar facets." *Id.* Deere's allegations here are simply untrue. During Mr. Holland's deposition, ***Deere's own counsel*** admitted that the "beveled planar facets" have no load bearing function when Mr. Holland explained the facets are only transition surfaces, just like the transition surfaces in the '175 Patent:

> Q.    You'd agree with me, wouldn't you, Mr. Holland, that there is a structure in between the front thrust surface and the side surfaces?
>
> A.    Well, no, I wouldn't agree. … You know, what I looked for when I was scanning these parts and inspecting these was, you know, is that, you know, transition surface between the front and the sides, is it doing something. And what I found in the scans was it's not doing anything. It's a transition surface that is not in play. And that turned out to be also the case when I had the benefit of looking at the FEA analysis … that bevel in there is not a load-functioning surface. ***It transitions between the two but doesn't provide a function beyond that.***
>
> Q.    Okay. ***Well, I understand that it doesn't provide a function and it's not load bearing***, but that doesn't negate the fact that it is separating the front thrust surface from the side inverse trans- -- I'm sorry, transverse inward projections, correct?
>
> A.    No. You know, semantics, but I would say it's, you know, connecting the two. You know, ***if you look at the '175 patent, you know, there's a transition shown in there between the side surfaces and the front.*** And, like I said, when you

actually build these parts, there's always a transition between the two. So rather than separating the two, I would say that this is a transition between the two.

(Ex. 1, Holland Dep. 312:4–313:24.)  Deere's criticism of Mr. Holland's analysis concerning the "beveled planar facets" in the Accused Products is simply unfounded.  At best, it raises a factual dispute for the jury to resolve.

It is well established "that it [is] for the jury to decide whether the accused [product] [i]s *equivalent* to the claimed [invention]."  *Warner-Jenkinson*, 520 U.S. at 38 ("The Federal Circuit held that it was for the jury to decide whether the accused process was equivalent to the claimed process. There was ample support in our prior cases for that holding.").  Deere raises a quintessential fact dispute that must be "charged [to] the jury to decide the issue." *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1191 (Fed. Cir. 1996).  As such, Deere's allegations concerning the sufficiency of Mr. Holland's equivalency analysis cannot be resolved on summary judgment.

## V.   DEERE'S INDIRECT INFRINGEMENT ARGUMENTS HAVE NO MERIT.

### A.  The Complaint Put Deere on Notice of the Asserted Patents.

Deere's argument that it cannot be held liable for indirect infringement without proof of pre-suit knowledge of the Asserted Patents has been explicitly rejected by this Court and has no support in Federal Circuit precedent.   On December 10, 2020, ESCO filed the original complaint in this case alleging infringement of the '662 Patent.  (D.I. 1.)  On the same day, ESCO's Assistant General Counsel emailed a copy of the complaint to Deere's General Counsel.  (Ex. 2, 12/10/2020 Schad Email ("I am writing to bring to your attention that one of Deere's product lines is infringing on ESCO's patent rights.").)  On April 7, 2021, after Deere had accepted service of the original complaint, ESCO filed an amended complaint alleging infringement of both the '662 Patent and

'175 Patent. (D.I. 11.) As a result, Deere indisputably had knowledge of the '662 Patent by December 10, 2020, and the '175 Patent by April 7, 2021.

This Court has held that for purposes of indirect infringement, "knowledge of the [asserted] patents [is] clearly conveyed to [a defendant] by the service of the complaint." *IOENGINE*, 2019 WL 330515, at *4. Deere never even cites this decision. The weight of the persuasive authority in this district agrees. *See, e.g.*, *ICON Health & Fitness, Inc. v. Tonal Sys., Inc.*, No. CV 21-652-LPS-CJB, 2022 WL 611249, at *3 (D. Del. Feb. 7, 2022) (Stark, J.); *EyesMatch Ltd. v. Facebook, Inc.*, No. CV 21-111-RGA-JLH, 2021 WL 4501858, at *3 (D. Del. Oct. 1, 2021) (Hall, M.J.), *report and recommendation adopted*, 2021 WL 5061730 (D. Del. Oct. 19, 2021) (Andrews, J.).

Deere does not dispute that it was aware of the Asserted Patents at least as early as service of complaints here (Ex. 3, Deere Response Rog No. 9), but instead relies on the *ZapFraud* decision to argue that ESCO's indirect infringement claims require that Deere had knowledge of the Asserted Patents *prior* to the original complaint.[2] (Deere Op. Br. 13.) Deere's argument is wrong, for several reasons. **First**, that decision is not binding on this Court and, was contrary to the weight of the authority in this District. **Second**, even if it applied here, ESCO **did** provide notice to Deere of infringement of at least the '662 Patent separate from the original complaint. (*See* Ex. 2, 12/10/2020 Schad Email.) ESCO's email to Deere provided notice of infringement for the express purpose of resolving any dispute without litigation. (*Id.*) This is precisely the type of "notice

---

[2] The other cases Deere cites actually support ESCO. *See Välinge Innovation AB v. Halstead New England Corp.*, No. 16-1082-LPS-CJB, 2017 WL 5196379, at *2 (D. Del. Nov. 9, 2017) ("Claims of indirect infringement can be premised on allegations that an alleged infringer had knowledge of the patents and knowledge of patent infringement … at the time of the filing of the complaint ('post-suit' or 'post-filing' knowledge)."); *Princeton Digital Image Corp. v. Ubisoft Ent. SA*, No. CV 13-335-LPS-CJB, 2017 WL 6337188, at *1 (D. Del. Dec. 12, 2017) (holding that "[w]ith regard to post-suit knowledge, a plaintiff's well-pleaded complaint may provide notice" of indirect and willful infringement).

letter" that Judge Connolly reasoned *would* provide the requisite notice for indirect infringement in lieu of the complaint itself.  *See ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 251 (D. Del. 2021); *see also ICON Health*, 2022 WL 611249, at *3.  ***Third***, ESCO's amended complaint also properly pleaded Deere's knowledge of at least the '662 Patent prior to its filing. (D.I. 11, ¶ 16.)  Even where an original complaint is inadequate to provide notice, courts have routinely held that such notice is sufficiently remedied by the filing of an amended complaint, as is the case here.  *Wrinkl, Inc. v. Facebook, Inc.*, No. 20-CV-1345-RGA, 2021 WL 4477022, at *7 (D. Del. Sept. 30, 2021) ("[T]he plaintiff should be allowed to amend a complaint to allege knowledge since the filing of the original complaint.").  Therefore, even applying the minority rule, Deere cannot claim that it lacks the requisite knowledge of the '662 Patent based on the original and amended complaints and direct correspondence from ESCO's in-house counsel.  And Deere certainly cannot feign ignorance of both of the Asserted Patents under the majority rule in this District.  *IOENGINE*, 2019 WL 330515, at *4.

### B.  The Locks and Adapters of the Accused Products are not Suitable for Substantial Non-Infringing Uses

Deere's argument that there is no contributory infringement for the locks or adapters used in the Accused Products is both legally and factually flawed.  Deere argues that the locking pin in the Accused Products does not contributorily infringe because "the locks ***recited in the asserted claims*** can be used in noninfringing base and tooth assemblies."  (Deere Op. Br. 15.)[3]  This argument entirely misses the mark.  It is blackletter law that contributory infringement considers whether the components of ***accused products*** can be used in a noninfringing manner—whether

---

[3]  Deere does not dispute that the pins and adapters used in the Accused Products are material components of the infringing article, nor could it.  As set forth in the Asserted Claims, the claimed "wear assemblies" include "a base" (i.e., an adapter) and "a lock" (i.e., a pin).  (*See, e.g.,* '662 Patent, claim 8; '175 Patent, claim 4.)

components described in a patent could be used in a non-infringing manner is beside the point. *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2006); *see also* 35 U.S.C. §271(c).  As such, the question here is whether the locking pin used in the Accused Products is suitable for a substantial non-infringing use.  The evidence definitively answers that question in the negative.

ESCO's expert, Mr. Holland, explained that the pin in the Accused Products is specially designed for use only with the Accused Products.  (ESCO Op. Br., Ex. E, Holland Op. Rpt. 33–34 ("[P]roprietary tooth systems and their component parts are specially designed to work only in their respective proprietary system, and are not intended or optimized to be used with other systems.").)  Deere's own documents confirm as much: "The patented Turn Kam pin *is the heart* of the TK-Series system."  (Ex. 4, John Deere Make and Model Sales or Technical Study Guide at 53 (emphasis added).)

Likewise, the adapters used in the Accused Products have no substantial non-infringing uses.  Mr. Holland explained that the adapters in the Accused Products are intended only for use in the Accused Products.  (*See* ESCO Op. Br., Ex. E, Holland Op. Rpt. at 33–34.)  Deere employees also testified that teeth and adapters are typically designed to only work as part of a proprietary system, such as the Accused Products here.  (*See* Ex. 5, Simmons Dep. 73:7–9 ("Q. Are teeth and adapters generally designed to work specifically with one another? A. Yes."); *see also id.* 74:4–15.)  And Deere documents reflect that the Accused Products, including adapters, cannot be used with other systems.  (Ex. 6, DEERE_0005875 at 6029 ("TK and RVJ not interchangeable").)

Deere argues that adapters in the Accused Products are suitable for substantial non-infringing uses because Deere has purportedly implemented a redesigned tooth, called the "Rev A1," for use with the adapters.  As discussed at length in ESCO's *Daubert* motion, there is ***no***

evidence that the so-called Rev A1 tooth is available to customers, or that it even works with adapters in the Accused Products.  (D.I. 194.)  Indeed, Deere's own technical expert, Dr. Klopp, testified he has seen no documentation of any field or lab testing of the Rev A1 redesign, nor is he even aware if it is available to customers.  (Ex. 7, Klopp Dep. 111:11–14, 113:2–9, 122:5–10.)  In short, there is simply no evidence in the record that adapters in the Accused Products can be used with the Rev A1 redesign, and the evidence that is in the record shows the adapters can only be used with the infringing Accused Products.[4]  At an absolute minimum, Deere's arguments raise factual disputes that must be resolved at trial.

## VI.   DEERE'S ATTEMPT TO RELITIGATE THE COURT'S PRIOR RULINGS IS IMPROPER

Deere has moved for summary judgment of indefiniteness on two terms: (i) "substantially parallel to the longitudinal axis" ('662 Patent, claims 8 and 21; '175 Patent, claims 4, 6, 13, and 17); and (ii) "to resist both vertical and horizontal loads" ('662 Patent, claims 8 and 21).  Deere's arguments are procedurally improper and substantively wrong. Deere has already pressed the very same indefiniteness allegations during *Markman* proceedings, and the Court twice ruled against Deere, holding the claims are not indefinite.  There is no legal basis to reconsider those rulings. But even if this Court were to reconsider the issue, Deere's arguments fail for the same reasons that Magistrate Judge Hall and Judge Andrews rejected them.

### A.  Deere's Indefiniteness Arguments are Untimely

Deere's motion is nothing more than an improper request for reconsideration.  Deere asked the Court to construe eight claim terms, including the terms "substantially parallel to the

---

[4]  Even if the Rev A1 tooth is currently available, it only became available recently.  That means there was no substantial non-infringing uses of the adapters between filing of the complaint in 2020 and when the Rev A1 purportedly became available in early 2023.  ESCO seeks damages for contributory infringement during that time frame, and there is substantial evidence for the jury to find that Deere contributorily infringed prior to release of the Rev A1 tooth.

longitudinal axis" and "to resist both vertical and horizontal loads," which Deere argued were indefinite.  (*See* D.I. 53.)  After briefing and oral argument, Magistrate Judge Hall rejected all of Deere's claim construction positions.  (D.I. 61.)  Deere objected.  (D.I. 65.)  After reviewing Magistrate Judge Hall's Report and Recommendation *de novo*, Judge Andrews likewise rejected all of Deere's claim construction positions.  (D.I. 156.)  Under Delaware Local Rule 7.1.5, Deere was required to file a motion for re-argument within 14 days after Judge Andrews's ruling.  It did not do so.  Thus, Deere's summary judgment arguments are untimely and have been waived.  Deere never even attempts to explain why this Court should consider (for a third time) whether these terms are indefinite.  Instead, Deere improperly rehashes the same arguments that have been already been twice rejected.  *See Barkes v. First Corr. Med., Inc.*, No. CIV. A. 06-104-JJF, 2008 WL 1808569, at *1 (D. Del. Apr. 18, 2008) ("A motion for reargument 'should not be used to rehash arguments already briefed or to allow a never-ending polemic between the litigants and the Court.'") (quoting *Dentsply Int'l, Inc. v. Kerr Mfg. Co.,* 42 F. Supp. 2d 385, 419 (D. Del. 1999)).

To support its indefiniteness arguments, Deere primarily relies on Mr. Holland's deposition testimony.  But ESCO submitted a declaration from Mr. Holland during claim construction, which Magistrate Judge Hall credited in her opinion rejecting Deere's arguments for both terms.  (D.I. 54-3; *see also* D.I. 61 at 16-19.)  Deere could have deposed Mr. Holland regarding that declaration as part of the claim construction process, but it chose not to do so.  *Schering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 298–99 (D. Del. 1998) ("These reasons dictate that newly discovered evidence can only serve as a basis for reargument if it were ***truly unobtainable*** at the time of the *Markman* hearing.").  Regardless, Mr. Holland's testimony is consistent with his declaration.  Because Deere simply rehashes arguments and presents no meaningfully new information (especially any that was

"truly unobtainable"), the Court should not reconsider Deere's indefiniteness arguments and should deny its motion for summary judgment.[5]

### A. Deere's Indefiniteness Arguments Lack Merit

Should the Court nevertheless choose to review Deere's arguments on the merits, Deere's motion should still be denied.  As explained below, neither of the challenged claims is indefinite.

(i)      *"substantially parallel to the longitudinal axis"*

Deere does not dispute that the Asserted Patents provide numerous examples of what constitutes "substantially parallel to the longitudinal axis."  Instead, Deere primarily argues that the term is indefinite because "[t]he patents provide no … upper limit" for what constitutes "substantially parallel."  (Deere Op. Br. 19–20.)  This exact argument has been rejected twice because Deere is improperly seeking mathematical precision.  *See Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) ("[A] patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement.").  Magistrate Judge Hall explained this point:

> Here, again, Deere denies that it seeks to impose a standard that would require numerical precision. Yet, its position is, essentially, that the claim or specification needs to provide an exact numerical range of angles that could constitute substantially parallel so that a person of skill in the art will know "just how much" they can deviate from parallel and still fall within the scope of the claim.

(D.I. 61 at 16.)  Magistrate Judge Hall rejected this argument because numerous cases hold the term "substantially" is not indefinite, and based on a specific decision from this District holding that the term "substantially parallel" is not indefinite.  (*Id.* at 14, n.21.) Judge Andrews likewise

---

[5]  ESCO did not seek summary judgment for these terms for indefiniteness under § 112 given the Court's *Markman* decision, and instead sought summary judgment on enablement for the term "substantially parallel to the longitudinal axis."  (D.I. 180, at 10–11, 13.)  Because indefiniteness is a question of law, and the Court has already ruled that the relevant terms are not indefinite, Deere should be precluded from arguing to the jury that either term is indefinite.

rejected Deere's attempt to impose a requirement that the claims "give examples that fall both within and without the term of degree." (D.I. 156 at 3–4 ("Defendant cites no Federal Circuit case that advances such a proposition").)  He held that "there are Federal Circuit cases, post-*Nautilus*, that hold that a claim is not indefinite even though the [patent] only cites examples that fall within the term of degree." (*Id.* (citing *Sonix,* 844 F.3d at 1379–81).)  As explained at length in ESCO's claim construction briefing and at the *Markman* hearing, the Asserted Patents provide specific guidance on what constitutes "substantially parallel."  A POSITA would understand the term "to account for the variability associated with the casting and forging manufacturing practices" inherent in the wear member industry.  (*See* D.I. 61 at 17.)

Deere cherry picks two excerpts from Mr. Holland's deposition to argue that the patent should include an upper limit of what constitutes "substantially parallel."[6]  (D.I. 156 at 3–4.)  But as this Court knows well, the focus of an indefiniteness analysis is on the intrinsic record, not extrinsic evidence.  Here, the intrinsic record provides express guidance to a POSITA of what constitutes "substantially parallel."  ('175 Patent at 9:53–61 (includes "parallel surfaces as well as those that diverge rearwardly from axis 128 at a small angle (e.g., of about 1-7°) for manufacturing or other purposes").)  In any event, Mr. Holland's testimony is consistent with the intrinsic evidence:

> [F]rom my knowledge in working in this field, there is not an upper limit that's been established by people that are familiar with the technology and working with it.  This guidance in [the patent] I think is helpful and it is, to me, consistent with the type of range that one would expect [in] a preferable embodiment.  I know of nothing that has ever established what that upper limit [of substantially parallel] could be.  And, as we talked about, depending upon the application, either the use

---

[6] Deere cites *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014), as support for its arguments, but that case is distinguishable.  *Interval Licensing* involved a "highly subjective" claim term and the only clue about the scope of that term came from a single example in the specification.  *Id.* at 1371–72.  Here, the terms are not highly subjective, and there are numerous examples and specific guidance provided in the patents.

of the equipment or the design of the equipment, that limit I think still remains to
be something that would be dependent upon those factors.

(Ex. 1, Holland Dep. 207:22–208:14.)   In other words, the guidance provided in the patent

combined with a POSITA's experience will inform a POSITA with reasonable certainty about the

scope of the claim term.  (*See* D.I. 61 at 17 ("Mr. Holland's opinion that a person of skill in the art

would understand the term substantially to take into account manufacturing variability is consistent

with the specification, which explains that 'substantially parallel' encompasses small deviations

resulting from manufacturing constraints.").)    Finally, Dr. Klopp himself used the term

"substantially" in his infringement report and he understood what it meant.  (*See* Ex. 7, Klopp Dep.

124:9–19 ("Q. Is there any sort of numerical range associated with your use of the term

"substantially" here? A. No. … Q. Is there an outer limit of what constitutes "substantially the

same?"  A. It's a little bit of you'll know it when you see it.").)  Simply put, Deere's position finds

no support in the law, the intrinsic record, or extrinsic evidence.

(ii)      *"to resist both vertical and horizontal loads during excavating"*

Deere argues this term is indefinite because "there is no objective measure or test in the

'662 Patent from which a PHOSITA could determine, with reasonable certainty, whether an

accused product meets this limitation."  (Deere Op. Br. 21.)  Again, this same argument has been

twice rejected.  Magistrate Judge Hall "reject[ed] Deere's suggestion that a particular test or a

mathematical amount of resistance needs to be identified for a person of skill in the art to

understand what the phrase 'to resist both vertical and horizontal loads' means."  (D.I. 61 at 19.)

She held "that the functional requirement that the surfaces resist both vertical and horizontal loads

does not stand alone" and that the claims themselves "contain significant structural limitations

regarding the surfaces" that must resist load.  (*Id.*)  Indeed, "functional language can 'promote[ ]

definiteness because it helps bound the scope of the claims by specifying the operations that the

17

[claimed invention] must undertake.'" *Nevro Corp. v Bos. Sci. Corp.*, 955 F.3d 35, 39 (Fed. Cir. 2020) (quoting *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1232 (Fed. Cir. 2016)).  Judge Andrews agreed and adopted her "well-reasoned opinion."  (D.I. 156 at 1.)

The '662 Patent describes several orientations of side stabilizing surfaces that allow the invention to resist vertical and horizontal loads.  ('662 Patent at 5:5–25, 7:16–22, 7:49–57.)  Mr. Holland testified that such guidance would allow a POSITA to understand how those surfaces resist vertical and horizontal loading.  (*See* Ex. 1, Holland Dep. 160:23–163:8 ("I believe that this claim you were just looking at, number 8, provides some specific description of how those loads are carried into the side inclined surfaces.  In addition, there's plenty of drawings and additional information, specification that discusses how these parts function.").  The Federal Circuit has repeatedly held functional claim terms are definite "where the patent '***provides a general guideline and examples*** sufficient to enable a person of ordinary skill in the art to determine the scope of the claims.'"  *Nevro.*, 955 F.3d 35, 39 (Fed. Cir. 2020) (quoting *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1335 (Fed. Cir. 2010)).  That is precisely the case here.  The term is not indefinite.

## VII.   CARPENTER '771 DOES NOT ANTICIPATE THE '662 PATENT

As detailed its motion, ESCO is entitled to summary judgment that the '662 Patent is not invalid.  Deere contends that Carpenter '771 anticipates the Asserted Claims of the '662 Patent based on two distinct embodiments in the reference.  But it is not proper to combine embodiments to manufacture an anticipation argument.  Even more problematic, Deere misrepresents the evidence of record.  Deere's arguments fail to create a genuine dispute of fact, and the Court should grant summary judgment that the '662 Patent is not invalid.

### A.  Deere Impermissibly Combines Distinct Embodiments to Allege Anticipation

As ESCO's motion for summary judgment explains, Deere and its expert rely upon two distinct embodiments in Carpenter '771 to allege that Carpenter '771 "discloses the limitations of

[8.13]" of the '662 Patent.  (Deere Op. Br. 33; *see also id.* at 37 (incorporating argument with respect to "limitation [21.9]").)   Specifically, Deere relies on the Figure 12 embodiment of Carpenter '771 as disclosing a "top stabilizing surface" and a "bottom stabilizing surface" that "axially extend[] substantially parallel to the longitudinal axis" of a socket.  (*See* ESCO Op. Br. 20.)  However, it is undisputed that the Figure 12 embodiment of Carpenter '771 does *not* have a "substantially parallel" "pair of side stabilizing surfaces," as claims 8 and 21 also require.  Instead, the purported "side stabilizing surfaces" in the Figure 12 embodiment are non-parallel and are described by Carpenter '771 as having "vertical divergence." (*Id.* (quoting Carpenter '771 ¶ 17)).

To allege that Carpenter '771 teaches "substantially parallel" side stabilizing surfaces, Deere and its expert turn to a ***distinct***, "***alternative*** embodiment"—Figure 14—of Carpenter '771. (Carpenter '771, ¶ 35.)  The Figure 14 embodiment, however, does *not* have "substantially parallel" top and bottom stabilizing surfaces, as the claims require.  Rather, Carpenter '771 teaches that its Figure 14 embodiment includes a "generally wedge shaped" base or nose that is formed by ***converging*** walls." (*Id.*, ¶ 52.)  A wedge-shaped wear assembly having "converging" top and bottom surfaces (like that shown in*, e.g.,* Fig. 15, below left; *see also* Fig. 14) clearly do not constitute "substantially parallel" "top" and "bottom stabilizing surfaces" (like those in Fig. 12; below right) as the claims explicitly recite.



Because Deere relies upon distinct embodiments of Carpenter '771 to meet the limitations recited in each of Claims 8 and 21, Deere's allegation of ***anticipation*** of the '175 Patent cannot survive summary judgment as a matter of law.  It is hornbook patent law that "[t]o anticipate, every element and limitation of the claimed invention must be found in a single prior art reference, ***arranged as in the claim***."  *Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001).  Carpenter '771 simply does not teach or disclose top and bottom stabilizing surfaces ***and*** side stabilizing surfaces that are all "substantially parallel to the longitudinal axis" of a socket, as arranged in the claims of the '175 Patent.

Deere clearly appreciates the weakness of its position, because it argues that:

> Dr. Klopp ultimately opines that a POSITA would recognize each limitation from claim 8 to be disclosed in Carpenter '771 and would ***readily envisage*** how the alternative disclosures ***could*** be arranged as recited in the claims without loss of function or incompatibility of components.

(Deere Op. Br. 35.)  However, Deere's failure to cite ***anything*** from Dr. Klopp's reports or deposition concerning what a POSITA would "readily envisage" of how "alternative disclosures could be arranged" tells the whole story.  The truth is that Dr. Klopp ***never offered any opinion or testimony*** concerning what a POSITA would "envisage."  In fact, Dr. Klopp never even appreciated that he referenced elements from distinct embodiments of Carpenter '771 in alleging anticipation.  Simply put, Deere has no factual basis for its argument here, and attorney argument alone cannot create a factual dispute.

Deere's contention of anticipation has no basis in fact or law.  It erroneously relies on distinct embodiments of Carpenter '771 to allege anticipation and that cannot suffice to survive summary judgment.  The Court should grant summary judgment that the '175 Patent is not invalid.

## B.  Deere Misrepresents the Record

As ESCO's opening brief details, Deere's allegation of anticipation over Carpenter '771 also fails as a matter of law for two separate reasons. **First**, Carpenter '771 explicitly teaches that the pair of side surfaces identified by Deere—i.e., "lateral surface 69" and "inner surface 71" (ESCO Op. Br., Ex. C, ¶ 230)—do **not** converge "toward a central location," as the claims require. Dr. Klopp annotated a cross-sectional view of Carpenter '771 showing that these surfaces in fact converge **away** from its side wall's central location. (*Compare id.* at Fig. 33 (below left; annotated) *with* '662 Patent, Fig. 8 (right; annotated).)



The difference between the claimed inventions and the prior art is clear, so Deere must attempt to create ambiguity in the term "central." Specifically, Deere alleges that ESCO's expert, "Mr. Holland[,] made clear that he read the claim term 'central location,' as used in the claims of the '662 Patent, to mean the 'midpoint' of [a] sidewall. Mr. Holland, however, could point to no disclosure in the '662 Patent that would support his understanding that 'central location' means 'midpoint.'" (Deere Op. Br. 31 (citing Holland Dep. 284–285, 288).) That assertion is not correct.

When questioned on the meaning of "central location," Mr. Holland stated a POSITA would understand it to mean "midpoint," despite Deere failing to present Mr. Holland with the '662 Patent itself during this line of questioning. *See* Ex. 1, Holland Dep. 288:9–14 ("Q. Is there

anything in the patent's disclosure that informs a person of ordinary skill that the central location is a midpoint?  A.  Without digging through the patent, I don't know the answer **off the top of my head**.").[7]  And it hardly takes the knowledge of a POSITA to appreciate that Mr. Holland's testimony is entirely consistent with the '662 Patent showing a "central location" at a midpoint of a sidewall.  (*See, e.g.,* '662 Patent, Fig. 8 (reproduced above, right).)

Despite the clear disclosure of a "central location" in the '662 Patent, Deere nonetheless alleges that "Mr. Holland's interpretation … is not only unsupported by the specification of the '662 Patent, it is directly contradicted by the '662 Patent."  (Deere Op. Br. 31–32.)  Deere cites an "alternative disclosure" of "asymmetric arrangements" in the '662 Patent, and reasons that a "POSITA would envisage implementing" locations other than a "central location."  (*Id.* at 32.)  Deere's confused logic here does not create a genuine dispute of fact.  Whether the '662 Patent **discloses** supposedly non-central, "asymmetric arrangements" is entirely beside the point, because the patent **claims** a "central location."[8]  As such, Deere must identify prior art having sidewalls which converge at a "central location" to anticipate **the claims**.  Whether Carpenter '771 purportedly discloses features that relate to unclaimed, alternative embodiments in the '662 Patent is irrelevant to the question of anticipation.  There is no genuine dispute that Carpenter '771 fails

---

[7]  In fact, Deere's counsel asked counsel for ESCO to explain his form objections relating to "what the claim language reads."  ESCO's counsel explained that it is improper to "excis[e] little words from the claim without letting [Mr. Holland] read the whole [claim] **or look at the spec**."  (Ex. 1, Holland Dep.. at 296:8–18.)

[8]  Though the claims control the question of anticipation, Deere misunderstands the disclosure of the '662 Patent.  The alternative embodiment of "asymmetric arrangements" for side stabilizing surfaces does not equate to these surfaces converging at non-central locations, as Deere assumes.  Rather, this disclosure simply means that side "stabilizing surfaces 44–47" do not have to be "**angled equally** relative to a horizontal plane."  ('662 Patent at 8:1–2.)  In other words, the side stabilizing surfaces could have different angles relative to the horizontal plane (and one another), but still converge at a "central location."  Deere clearly misunderstands the import of this disclosed alternative embodiment in the '662 Patent.

to disclose side stabilizing surfaces that laterally converge at a "central location," under the plain and ordinary meaning of that term.

**Second**, there is no genuine dispute that Carpenter '771 does not teach a "***pair*** of side stabilizing surfaces" that are "substantially parallel to the longitudinal axis," as claimed. Specifically, Carpenter '771 teaches that lateral surface 69 and inner surface 71—which Deere identify as a "pair" of side stabilizing surfaces—of its socket correspond to "lateral bearing face[] 83" and "outer face[] 81" of its base, respectively, and these surfaces are non-parallel and have "vertical divergence." (Carpenter '771, ¶ 17.) In its Figure 14 embodiment, Carpenter '771 teaches an alternative in which ***only*** "[t]he lateral bearing surfaces 83 are generally parallel," and never teaches that the "outer face 81" is parallel. (*Id.*, ¶ 17, Figs. 3, 6; ESCO Op. Br., Ex. D ¶¶ 169–71.)

Although Carpenter '771 clearly identifies that only one side surface is parallel, Deere claims that "outer face 81" must also parallel because Carpenter '771 teaches that its "rails could have a constant depth and simply be spaced from the respective converging wall." (Deere Op. Br. 34 (quoting Carpenter '771, ¶ 69).) Deere offers no meaningful explanation why "constant depth" "rails" in Carpenter '771 necessitates the "outer face 81" ***also*** being parallel, nor could it. Carpenter '771 describes a "tooth system" in "(FIGS. 1–10)" with "rails [that] are preferably formed with … generally ***constant depths***," and the equivalent "side surfaces" identified by Deere are not "parallel" in that embodiment. (*See* Carpenter '771, ¶¶ 51, 53, Figs. 6, 7.) Even were the "lateral surface 69" made parallel (green surface, below)—as Carpenter '771 describes for Figure 14—that does not necessitate surface 71 (red surface, below) to ***also*** be parallel, as Deere assumes.

23



Deere's argument "contradict[s] the clear disclosure" of Carpenter '771 that ***only*** its "lateral bearing surfaces 83 are generally parallel" in the Figure 14 embodiment, which "is insufficient to defeat summary judgment." *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, No. 11-01011-AG, 2014 WL 12597150, at *16 (C.D. Cal. June 13, 2014) (citing *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1362 (Fed. Cir. 2007)).

For any of the foregoing reasons, the Court should grant summary judgment that the '175 Patent is not invalid over Carpenter '771.

## VIII.   CONCLUSION

This Court should deny Deere's motions for summary judgment that the Asserted Claims are invalid and not infringed.

/s/ Nathan R. Hoeschen
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
OF COUNSEL:                              Nathan R. Hoeschen (6232)
Brian D. Sieve, P.C.                     Emily S. DiBenedetto (No. 6779)
Paul D. Collier                          SHAW KELLER LLP
Jeremy D. Roux                           I.M. Pei Building
Xaviere Giroud                           1105 North Market Street, 12th Floor
Tareq M. Alosh                           Wilmington, DE 19801
KIRKLAND & ELLIS LLP                     (302) 298-0700
300 North LaSalle                        jshaw@shawkeller.com
Chicago, IL 60654                        kkeller@shawkeller.com
(312) 862-2000                           nhoeschen@shawkeller.com
                                         edibenedetto@shawkeller.com
Dated: April 5, 2023                     *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Nathan R. Hoeschen, hereby certify that on April 5, 2023, this document was served on the persons listed below in the manner indicated:

**BY EMAIL**

James D. Taylor, Jr.
Michelle C. Streifthau-Livizos
SAUL EWING ARNSTEIN & LEHR LLP
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
(302) 421-6800
james.taylor@saul.com
michelle.streifthau-livizos@saul.com

Rachael L. Rodman
ULMER & BERNE LLP
65 East State Street, Suite 1100
Columbus, OH 43215
(614) 229-0039
rrodman@ulmer.com

John F. Bennett
Paul M. Ulrich
Paul J. Linden
Ava M. Abner
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
(513) 698-5000
jbennett@ulmer.com
pulrich@ulmer.com
plinden@ulmer.com
aabner@ulmer.com

*/s/ Nathan R. Hoeschen*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (6232)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for Plaintiff*